John T. Linkens and Virginia Linkens, Plaintiffs-Appellees, v. Henry Furman, Defendant, v. Lake Shore Mutual Ins. Co., Garnishee-Defendant-Appellant.

Gen. No. 49,224.

First District, First Division.

September 21, 1964.

1

Greenberg, Ziv & McCarthy, of Skokie (Norton Wasserman, and Orner & Wasserman, of counsel), for appellant.

Ruttenberg & Ruttenberg, of Chicago (Marvin H. Ruttenberg, David C. Ruttenberg and Allen Hartman, of counsel), for appellees.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Garnishee-defendant, Lake Shore Mutual Insurance Company, appeals from judgments entered against it, totalling $12,000. The garnishment judgments are based on plaintiffs' unpaid personal injury action judgments against an alleged insured of the garnishee-defendant.

Lake Shore contends that by reason of an endorsement, its policy of insurance provided no coverage while the insured vehicle was being operated by a person under the age of 25 years, and that the vehicle operator, defendant Henry Furman, was below that age at the time of the occurrence.

Plaintiffs contend the endorsement was inoperative and void because it was issued in defiance of a ruling of the Director of Insurance. Plaintiff also contends it was never executed by the assured owner of the car, Peggy Green, nor by anyone with her authority.

The garnishment action was tried without a jury on an affidavit for garnishment, interrogatories and answers, and admissions of fact served upon the garnishee-defendant before trial. The record also in-

cludes testimony of witnesses for the plaintiffs and for the garnishee-defendant.

Under date of October 28, 1960, Lake Shore Mutual Insurance Company issued its policy of automobile liability insurance to Peggy Green, a self-employed caterer, on her automobile, registered and licensed in her name. The policy period was from October 31, 1960, to October 31, 1961, and stamped across its first page was the legend "No drivers under 25 years of age." The policy included so-called "omnibus coverage," which insured the person named therein and any other person driving the automobile with the permission of the insured. No exclusions or conditions restricting the use of the insured automobile by drivers under the age of 25 years appear in the printed portions of the policy.

As to delivery of the policy, the secretary of Lake Shore testified to their routine procedure: "At the time of the issuance of the policy here in issue, the policy itself and several dailies would be mailed to the producer of record. A welcome letter and a letter of transmittal, and a restrictive endorsement, would then be mailed directly to the assured as the address was stated on the face of the policy. . . . No copy of the transmittal letter is kept in our file. The transmittal letter is addressed to nobody specifically." He further testified that the restrictive endorsement "was a company policy in relationship to drivers under the age of 25 years. Where there was doubt in the mind of the underwriter concerning the presence of an under age driver, a restrictive endorsement was sent out." The pertinent part of the endorsement states:

"In consideration of the Company keeping the above numbered policy in force and the Company not exercising its right of cancelation, it

3

is hereby understood and agreed that the Coverages, provided by the above numbered policy, *DO NOT APPLY* while the vehicle described in the policy is being operated by any person under the age of TWENTY-FIVE (25) YEARS."

In the instant case, a restrictive endorsement was returned to Lake Shore, purporting to be signed by Peggy Green and witnessed by Shirley Hirsch, an insurance broker who handled all of her insurance business. Peggy Green testified that she had never seen the endorsement until a representative of plaintiffs exhibited it to her. She stated she had not signed the instrument and that her signature had been forged. Shirley Hirsch admitted she signed the document as "witness," but could not recall witnessing the Green signature. She also stated: "I would not recognize Peggy Green's signature."

As to the occurrence, the record shows that on February 10, 1961, defendant Furman was driving the car at the request of Peggy Green, and collided with an automobile driven and occupied by the plaintiffs. At that time, Furman was 21 years of age. After the collision, Peggy Green went to the office of Shirley Hirsch and reported what had happened, and later, representatives of the garnishee-defendant took a statement from her. After plaintiffs commenced their personal injury action against Green and Furman, defendants tendered the defense of the action to Lake Shore, and when it disclaimed any responsibility, defendants obtained their own counsel to defend the action. Peggy Green was voluntarily dismissed from the suit, and in a nonjury trial, judgments totalling $12,000 were rendered against defendant Furman.

Both parties rely on a number of points to reverse or sustain the judgments against the garnishee-defendant. However, we address ourselves to the contention which we believe is determinative here—that

4

"the so-called endorsement relied upon as a defense to this action by garnishee-defendant was disapproved by the Illinois Department of Insurance and is illegal, ineffective, and cannot be construed less favorably to plaintiffs than if it had not been drawn." As to the rubber stamp legend, the garnishee-defendant does not contend that it reduced the insurance coverage. It "was affixed to the policy as additional notice to the policyholder that the policy contained restrictions."

On this point, plaintiffs rely on provisions of the Illinois Insurance Code (Ill Rev Stats 1959, c 73, § 755(2)) and on correspondence in 1960 and prior to the issuance of the policy, between Lake Shore and the Director of Insurance of Illinois.

The record shows that pursuant to a rule issued by the Director of Insurance under statutory powers given him in §§ 755(2) and 1013, Lake Shore on May 4, 1960, submitted to the Director the instant restrictive endorsement, which was to be used in conjunction with its automobile liability insurance policy, Form CC 1001, here involved.

Following an exchange of letters, the Director wrote Lake Shore on September, 8, 1960, advising:

" . . .

"We have again reviewed your comments in regard to the restrictive endorsements and upon further review of the application, which is made a part of the contract, we feel that the questions answered by the insured sufficiently protect the company without the use of these restrictive endorsements.

"If you can furnish this Department with any examples of how the use of these endorsements would further protect the company in addition to the use of the application, we would be pleased

5

to review same. However, at this time, we must advise you that these endorsements are not acceptable for use in this State."

Under date of September 9, 1960, Lake Shore wrote the Director and again requested "the approval of the Department of the restrictive endorsements." To this letter, the Director responded under date of October 18, 1960, and stated:

"We have very carefully reviewed your letter and all of your previous correspondence relative to the restrictive endorsements submitted with your original letter of May 4, 1960. From the various endorsements that you have proposed it seems to the writer that you would be in position to restrict the coverage in your policy to an extreme extent.

"We note the situation set out in your letter of September 9, 1960 possibly could have been avoided had you had the policy restricted but we are unable to reconcile the selling of a policy intended to extend certain coverages and then restrict same to the point where you can decline liability when an accident occurs, after all an insurance company is operating a risk business where there are hazards which are unforeseen but must be met when the insured needs the protection. We ask this question in respect to the situation listed in your letter of September 9, 1960: 'Would you have refused to issue an SR 21 to the Accident Report Office in respect to this accident providing you had attached one of your restrictive endorsements.'

"We would be pleased to consult with you further in respect to this matter."

The record also contains subsequent correspondence between Lake Shore and the Director, which indi-

■■■■■■■■■■■■

cates that the Department of Insurance never accepted or approved the use of the restrictive endorsements, and in a letter dated February 23, 1962, Lake Shore informed the Department of Insurance: "We discontinued use of the endorsements about the beginning of 1962 and will not use them in the future." The record is silent as to whether Lake Shore availed itself of a judicial review of the Director's decision in its letter of September 8, 1960, that "at this time, we must advise you that these endorsements are not acceptable for use in this State," as provided for in § 1019.

The garnishee-defendant contends that "the restrictive endorsement is a legally effective provision regardless of any action taken by the Illinois Department of Insurance," and argues that "the only manner in which the Director is authorized to regulate casualty insurance forms is not by disapproving them before issuance, but by ordering 'the company or companies issuing such forms to discontinue the use of same.'" This argument is premised on that part of paragraph 755(2) which states: "The Director . . . may require . . . the filing of any generally used riders, endorsements . . . . Nothing herein contained shall require a company . . . to obtain approval of such forms before the same are issued nor in any way affect the legality of any policy that has been issued and found to be in conflict with this subsection . . . ."

■■ We are not persuaded that paragraph 755 (2) should be construed to allow casualty insurance companies to issue endorsements binding on their insureds, *after* the Director of Insurance has expressly found the endorsements to be "not acceptable for use in this State." If such a construction were to prevail, the filing and examination provisions of paragraph 755(2) would be rendered ineffective to accomplish their evident function of public protection.

When construing statutes, courts must presume the legislature intended to enact an effective law. A construction which would make the statute ineffective in operation therefore must be avoided. Pliakos v. Liquor Control Commission, 11 Ill2d 456, 143 NE2d 47 (1957).

Although both sides cite and discuss Dempsey v. National Life & Acc. Ins. Co., 338 Ill App 109, 86 NE2d 871 (1949), reversed in 404 Ill 423, 88 NE2d 874, we do not consider its pronouncements to be controlling here.

■ We believe the letters from the Director of September 8 and October 18, 1960, show that the Director had decided that the restrictive endorsement contained "exceptions and conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy." His decision "that these endorsements are not acceptable for use in this State," communicated in writing, was tantamount to an order to the garnishee-defendant to "discontinue the use" of the endorsement under paragraph 755(2).

As the garnishee-defendant issued the restrictive endorsement on October 28, 1960, ten days after the last letter from the Director of Insurance informing the garnishee-defendant that the endorsement was still not acceptable, the endorsement cannot be given the effect of withdrawing the insurance coverage extended by the "omnibus" clause of the policy.

We hold, therefore, the liability of the garnishee-defendant is determined by the terms and provisions of the policy itself, and it is not restricted by the terms of the endorsement. Since nothing in the printed portions of the policy of insurance excuses the garnishee-defendant from covering the risk involved in the instant case, the judgments for the plaintiffs should be affirmed.

8

In view of our holding, it will not be necessary to decide questions of agency arising from the instant broker and client relationship, which both sides have argued at length.

Therefore, for the reasons above expressed, the judgments for the plaintiffs are affirmed.

Affirmed.

BURMAN and KLUCZYNSKI, JJ., concur.