470 F.2d 700
 Harold A. MILLER and State Automobile and Casualty
Underwriters, by Automobile Underwriters, Inc.,
Attorney in Fact, Appellants,
v.
NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY, a
Corporation, Appellee, and Betty M. Armstrong, Appellant.
 No. 72-1046.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 12, 1972.
Decided Dec. 6, 1972.
Rehearing Denied Jan. 9, 1973.
 
 Mart R. Vogel, Fargo, N. D., made argument for State Auto & Casualty.
 Lawrence A. Leclerc, Jr., Fargo, N. D., made argument for Armstrong.
 J. P. Dosland, Moorhead, Minn., made argument for Miller.
 James D. Cahill, Moorhead, Minn., made argument for National Farmers Union.
 Before MATTHES, Chief Judge, and LAY and HEANEY, Circuit Judges.
 LAY, Circuit Judge.
 
 
 1
 In an action for a declaratory judgment the district court was faced, as we are on appeal, with the repetitive task of untangling another web of confusion created by the inarticulate language of two automobile liability policies.[1] At stake is the respective obligations of each company, the personal liability of their insured and their financial responsibility to injured parties. The district court, 334 F.Supp. 557, found that State Automobile and Casualty Underwriters (hereinafter State Auto) provided the sole protection to its insured, Harold A. Miller, for a truckcar accident which occurred on May 30, 1969, south of Fargo, North Dakota. Betty Armstrong was severely injured in the accident and her husband was killed. Mrs. Armstrong subsequently recovered a judgment of $160,000 against Miller and the driver of a third vehicle. She now joins Miller and State Auto in claiming that the National Farmers Union Property and Casualty Company (hereinafter National Farmers Union) owes primary coverage and State Auto is only an excess carrier.
 
 
 2
 National Farmers Union specifically insured the accident-involved vehicle which belonged to its insured, Barney's Transport, Inc. At the time of the accident Bernard Dickhaus, the owner of Barney's transport, had loaned the vehicle to Miller for use in Miller's milk hauling business. Harold A. Miller was in the bulk milk hauling business in North Dakota and Minnesota operating under permits issued by the state public service commissions in those states. Barney's Transport was in a similar business. The evidence is undisputed that it was the custom of the two companies to interchange vehicles on a temporary basis whenever a truck of one or the other was disabled. This was merely an informal oral agreement with the only apparent obligation being for each party to reciprocate if the need arose. On this occasion, however, Miller testified that because of his extended use of the truck, he had contemplated making some payment to Barney's Transport. Both insurers provided $100,000-$300,000 coverage. The district court held that the National Farmers Union policy, which provides omnibus coverage to anyone driving with the permission of the assured, did not cover Miller because of a Long Haul Truckmen endorsement which excluded coverage for any person while "such automobile is not being used exclusively in the business of the named insured [Barney's Transport] and over a route the named insured is authorized to serve by federal or public authority."[2]
 
 
 3
 We respectfully disagree. Under the controlling law of Minnesota[3] we find that both insurers provided concurrent coverage and must prorate the loss.
 
 
 4
 The trial court, without discussion, found that the Long Haul Truckmen endorsement had been filed.[4] We hold this finding to be clearly erroneous.
 
 
 5
 The record demonstrates that the Minnesota Commissioner of Insurance has adopted regulations which allow insurance companies to file their policies and endorsements either by filing a copy of the form itself with the Insurance Department (independent filing) or by filing with reference to a standard form submitted by an insurance bureau (filing by reference). In order to file by reference the insurance regulations require that the company notify the commissioner by a letter containing "a complete description of each filing, including title, form number and edition or revision date" of the particular form desired.
 
 
 6
 National Farmers Union contends that its Long Haul Truckmen endorsement was filed by reference. It relies on two letters sent to the Insurance Department expressing its intention of replacing the old "General Liability Policies" with the "New Standard Provisions for General Liability Insurance." After the first letter dated October 10, 1966, the Insurance Department requested the form numbers of the general liability forms being replaced. On January 10, 1967, National Farmers Union responded by listing certain forms and by reaffirming its desire to adopt the new standard provisions. At no time did National Farmers Union refer to the Long Haul Truckmen endorsement, nor did it ever include its "title, form number and edition or revision date."
 
 
 7
 Berton W. Heaton, an insurance analyst for the Minnesota Department of Insurance,[5] testified by deposition that the Long Haul Truckmen endorsement had not been filed with the Department, either independently or by reference. The files of the Insurance Department showed that National Farmers Union had filed independently in the past and had never filed its Long Haul Truckmen endorsement independently or by reference.[6]
 
 
 
 * * *
 Section 70.38 of the Minnesota statutes[7] requires National Farmers Union to file with the Commissioner of Insurance its policy and rating plan. That section reads in part:
 "Subdivision 1. Contents; information; public inspection. Every insurer shall file with the commissioner every manual of classifications, rules and rates, every rating plan and every modification of any of the foregoing which it proposes to use. Every filing shall state the proposed effective date thereof, and shall indicate the character and extent of the coverage contemplated. . . .
 "Subd. 2. Membership in licensed rating organization in lieu of filing. An insurer may satisfy its obligation to make such filings by becoming a member of, or a subscriber to, a licensed rating organization which makes such filings, and by authorizing the commissioner to accept filings by that rating organization on its behalf. . . .
 
 
 
 8
 * * *
 
 
 9
 "Subd. 7. . . .
 
 
 10
 "(f) Penalties. The commissioner may, if he finds that an agent or company has knowingly or willfully or negligently issued and delivered a policy without full compliance with the provisions of clause (c), impose a penalty of not more than $500 for the first violation and $50 for each additional violation. Such penalties may be in addition to any other penalty provided by law.
 
 
 11
 "Subd. 8. Effective date of Laws 1947, Chapter 119. Beginning 90 days after the effective date of Laws 1947, Chapter 119, no insurer shall make or issue a contract or policy except in accordance with filings which are in effect for that insurer as provided therein or in accordance with subdivision 6 or 7." (Emphasis ours.)
 
 
 12
 The primary purpose of the statute is not the approval of policy forms but the approval of premium charges.[8] However, the statutes make clear that the entire insurance contract is subject to the supervision of the Commissioner of Insurance. The Minnesota Supreme Court in Coughlin v. Reliance Life Insurance Co., 161 Minn. 446, 201 N.W. 920, 922 (1925), although considering a rate regulating statute covering life insurance policies, observed:
 
 
 13
 "Under our statute the insurance companies are put under public supervision and the forms of policies are subject to public supervision. They are restricted in making contracts much as public utilities. All the terms of their contracts must be in the policy. None can exist outside the policy." (Emphasis ours.)
 
 
 14
 Other courts which have faced the question of the effect of an unfiled or unapproved policy or provision have generally held that portion of the policy which has not been filed void. See e. g. Workman v. Great Plains Insurance Co., 189 Neb. 22, 200 N.W.2d 8 (1972); Travelers Insurance Co. v. Chicago Bridge & Iron Co., 442 S.W.2d 888 (Tex.Ct.Civ.App. 1969), application for writ of error refused; American Mutual Fire Insurance Co. v. Illingworth, 213 So.2d 747 (Fla.Dist.Ct.App.1968); cf. Linkens v. Furman, 52 Ill.App.2d 1, 201 N.E.2d 645 (1964); Ottens v. Atlas Assurance Co., 226 Wis. 596, 275 N.W. 900 (1937).
 
 
 15
 We conclude that the endorsement is not enforceable and hold that National Farmers Union provided primary coverage for the truck driven by Miller at the time of the accident.
 
 
 16
 It remains to be determined whether Miller's insurance carrier, State Auto, provides primary or excess coverage. The answer depends upon the untangling of State Auto's Public Liability endorsement, Temporary Substitute Automobile clause and Hired Automobile endorsement.
 
 
 17
 The State Auto policy contains a Public Liability endorsement which waives the description of the motor vehicle to be insured thereunder, and agrees to pay, within the limits of the policy, any final judgment for loss caused by any and all motor vehicles operated by the insured under its certificate of public convenience and necessity. National Farmers Union argues that this endorsement requires State Auto to provide primary coverage,[9] however, the cases relied upon by National Farmers Union do not confront the issue of primary or secondary liability for contribution between joint insurers. In any event, the law is well settled in Minnesota that notwithstanding a public liability clause an insurer may still provide proration or even excess liability by other clauses within the policy. Corcoran v. State Automobile Insurance Ass'n, 256 Minn. 259, 98 N.W.2d 50 (1959). The Minnesota Supreme Court considering a similar Public Liability endorsement in Corcoran observed:
 
 
 18
 "If there were no other insurance in effect covering the losses arising out of the accident, it is apparent that this endorsement would render State Auto liable (up to the limits of its policy) for any final judgment recovered against Laqua by virtue of the fact that at the time of the accident he was operating a motor vehicle under the permit issued to him by the Minnesota Railroad and Warehouse Commission and for the purposes authorized thereby.
 
 
 19
 "But where there is other insurance fully covering the loss, as in the instant case, it would seem logical that the standard liability provisions of the policies should govern. Obviously, the described endorsement was required by the commission for protection of members of the traveling public and not as a measure of the liability obligations existing between the insurers under their respective policies." Id. at 53-54.[10]
 
 
 20
 Therefore, State Auto's Public Liability endorsement does not necessarily make it a primary insurer.
 
 
 21
 State Auto contends that the truck used by Miller was a temporary substitute automobile and the "other insurance" clause of its policy makes the coverage for a temporary substitute automobile excess insurance. We do not reach this contention since we find the temporary substitute automobile clause not controlling. Rather State Auto's Hired Automobile endorsement is applicable here.[11] A "hired automobile" is defined as a "motor vehicle . . . used under contract in behalf of, or loaned to, the named insured . . . ." (Emphasis ours.) In another section of the endorsement it declares that the premium basis is "cost of hire" meaning "the amount incurred for hired automobiles."
 
 
 22
 The few courts which have considered the issue of defining a "hired automobile" generally have held that the term "contract" does not include a gratuitous use and some benefit must flow to the bailor. See e. g. Farmers Mutual Insurance Co. v. United Pacific Insurance Co., 206 Or. 298, 292 P.2d 492, 495 (1956); 12 Couch on Insurance 2d Sec. 45:265, at 290 (1964). But see Rasmussen v. Western Casualty & Surety Co., 15 Utah 2d 333, 393 P.2d 376 (1964). The evidence shows that Miller and Barney's Transport had agreed to "reciprocate" in the temporary use of each other's trucks; thus, their agreement was not a gratuitous contract. Mr. Dickhaus of Barney's Transport knew he could rely on Miller to lend him a truck if the need arose. Moreover the State Auto Hired Automobile endorsement is not merely confined to a "contract," it also refers to an automobile "loaned to" the insured which clearly includes a truck operated under a reciprocal borrowing agreement. Cf. Rasmussen, supra at 378.
 
 
 23
 In State Farm Mutual Automobile Insurance Co. v. American Casualty Co., 433 F.2d 1007 (8 Cir. 1970), this court, applying North Dakota law, found that the involved vehicle was a "hired automobile" because it was "used under contract in behalf of, or loaned to, the named insured," but because the vehicle was not insured on a "cost of hire" basis, American Casualty's excess clause was not applicable. The distinguishing feature in State Farm was the "other insurance" clause which provided excess coverage for "any hired automobile insured on a cost of hire basis." This definition is not contained in State Auto's policy. And under Minnesota law, where the insurer has not received all the premium it should have collected for its exposure, "this factor alone is not decisive of insuring intent." Sathre v. Brewer, 289 Minn. 424, 184 N.W.2d 668, 672 (1971). See also Federal Insurance Co. v. Prestemon, 278 Minn. 218, 153 N. W.2d 429 (1967). Thus we conclude that State Auto provided primary coverage under its Hired Automobile endorsement.
 
 
 24
 The Minnesota Supreme Court in Sathre v. Brewer, supra, Federal Insurance Co. v. Prestemon, supra, and Olson v. Hertz Corp., 270 Minn. 223, 133 N.W.2d 519 (1965), has declared that equitable principles govern in solving conflicting, overlapping insurance escape or excess clauses. However, these cases and the equitable principles applied[12] are not germane where the two policies are both primary and no conflicting escape or excess clauses are involved. See Dukeman v. Hardware Mutual Casualty Co., 286 Minn. 118, 174 N.W.2d 237, 240-241 (1970). Under Minnesota law where there is no conflict in the escape clause and where overlapping primary coverage exists the loss is shared ratably by the insurers. Dukeman, supra at 241; Woodrich Const. Co. v. Indemnity Insurance Co., 252 Minn. 86, 89 N.W.2d 412 (1958). This we find to be the appropriate method which should govern contribution between State Auto and National Farmers Union.
 
 
 25
 Harold Miller contends that he should recover from National Farmers Union his attorney fees incurred in defending himself. This contention overlooks that State Auto provided him a liability defense as they were obligated to do under their policy. Miller testified that he hired an attorney to protect his exposure for damages over the limits of the State Auto policy. However, the damage prayer on the claims filed greatly exceeded the limits of both policies. We find the proof insufficient to show that National Farmers Union's initial refusal to provide coverage to be the sole reason for plaintiff's hiring counsel. We hold Miller's attorney fees not collectible.
 
 
 26
 Judgment reversed and remanded for entry of judgment in accordance with this decision.
 
 
 
 [1]
 It would make interesting statistics to see how many insurance companies require litigation to settle controversies arising from the conflicting and ambiguous escape clauses in their respective policies. No one case ever seems to conclusively define the respective obligations. Each company, undaunted by prior decisions, continues in unremitting litigation with the only significant result being infinite expense and court congestion. See e. g. American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers Mutual Casualty Ins. Co., 280 F.2d 453 (5 Cir. 1960). Hopefully, state legislatures or the companies themselves will someday declare a simple rule governing the relationship of primary and secondary carriers where overlapping coverage occurs
 
 
 [2]
 It is urged that even if the National Farmers Union Long Haul Truckmen endorsement is applicable, the policy provides coverage under the omnibus clause since the endorsement is made "subject" to it. This is denied by National Farmers Union. We need not meet this issue since we find the Long Haul Truckmen endorsement is otherwise not applicable
 
 
 [3]
 Both of the assureds were residents of Minnesota and contracted with the respective insurers in Minnesota. The result would be the same under North Dakota law. See note 6, infra
 
 
 [4]
 The district court in a footnote observed:
 "While the evidence is conflicting as to whether or not National had properly filed this endorsement with the Insurance Departments of Minnesota and North Dakota, it was sufficient to warrant a finding that the necessary filings had been made. In any event, this case does not involve the effect of failure to comply with the respective states' filing requirements which are necessary for the protection of the public. Rather, we are concerned with responsibility as between two insurance carriers."
 It is not wholly accurate to characterize this as a dispute solely between two insurance companies. The protection of the public and an assured are also involved. Under the district court's holding Mrs. Armstrong would not receive full satisfaction of her judgment and Miller, as the permissive user of Barney's truck, would not be protected for the total loss. Whether the endorsement which might exclude coverage was properly filed is a basic issue necessary to resolve.
 
 
 [5]
 Mr. Heaton was the official who approved or disapproved policy forms, endorsements and rates filed with the Department
 
 
 [6]
 The deputy commissioner for the North Dakota State Insurance Department likewise testified by deposition that National Farmers Union had never submitted its Long Haul Truckmen endorsement for approval in North Dakota. Section 26-03-42 of the North Dakota Century Code reads:
 "No policy of insurance shall be issued or delivered in this state until:
 
 
 [3]
 If it is a policy against loss or damage by sickness, bodily injury, or death by accident of the insurance, the form thereof, together with a table of rates and classification of risks, has been filed with the commissioner of insurance."
 
 
 [7]
 Section 70.38 was repealed and re-enacted as Secs. 70A.06 and 70A.07 effective September 1, 1969
 
 
 [8]
 Minn.Stat.Ann. Sec. 70.35 (1968) states:
 "The purpose of sections 70.35 to 70.51 is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory, and to authorize and regulate cooperative action among insurers in rate making and in other matters within the scope of these sections. Nothing in sections 70.35 to 70.51 is intended (1) to prohibit or discourage reasonable competition, or (2) to prohibit, or encourage except to the extent necessary to accomplish the aforementioned purpose, uniformity in insurance rates, rating systems, rating plans or practices. Sections 70.35 to 70.51 shall be liberally interpreted to carry into effect the provisions of these sections." (Emphasis ours.) (Repealed and re-enacted as Secs. 70A.01 and 70A.02 effective September 1, 1969.)
 Cf. Travelers Insurance Co. v. Chicago Bridge & Iron Co., 442 S.W.2d 888, 893-894 (Tex.Ct.Civ.App.1969).
 
 
 [9]
 Miller is required to carry public liability coverage by the Minnesota Motor Carriers Act, Sec. 221.141. However, the analogous Safety Responsibility Act, Sec. 170.40, specifically permits prorating of insurance and combining insurance coverage:
 "Subd. 9. Any motor vehicle liability policy may provide for the prorating of the insurance thereunder with other valid and collectible insurance.
 "Sub. 10. The requirements for a motor vehicle liability policy may be fulfilled by the policies of one or more insurance carriers which policies together meet such requirements."
 
 
 [10]
 Other courts have arrived at a similar conclusion concerning public liability insurance coverage. See generally Marwell Construction, Inc. v. Underwriters at Lloyd's, London, 465 P.2d 298, 310 (Alaska 1970); Continental Casualty Co. v. Travelers Insurance Co., 84 Ill.App. 2d 200, 228 N.E.2d 141, 144-145 (1967); Allstate Insurance Co. v. Shelby Mutual Insurance Co., 269 N.C. 341, 152 S.E.2d 436, 444-445 (1967); Allied Mutual Insurance Co. v. Farm Bureau Mutual Insurance Co., 257 Iowa 100, 131 N.W.2d 798, 801 (1964) and cases cited therein; Continental Casualty Co. v. Weekes, 74 So.2d 367, 369 (Fla.1954)
 
 
 [11]
 "A policy and endorsements should be construed, if possible, so as to give effect to all provisions, but, where provisions in the body of the policy conflict with an endorsement or rider, the provision of the endorsement governs." Bobich v. Oja, 258 Minn. 287, 104 N.W.2d 19, 24 (1960). See also Haugen v. Auto-Owners Insurance Co. of Lansing, 191 N.W.2d 274, 280 (N.D.1971); Motor Vehicle Casualty Co. v. LeMars Mutual Insurance Co., 254 Iowa 68, 116 N.W.2d 434, 436 (1962); Wyatt v. Wyatt, 239 Minn. 434, 58 N.W.2d 873, 875 (1953); 1 Couch on Insurance 2d Sec. 15:30, at 701 (1959); 13 Appleman, Insurance Law & Practice Sec. 7538, at 294 (1943)
 
 
 [12]
 The equitable test is stated in Federal Insurance Co. v. Prestemon, 153 N.W.2d at 436-437, as follows:
 "(1) Which company by its policy intended to cover 'business operations'?
 (2) Which company specifically described the accident-involved vehicle in its policy?
 (3) Which premium is reflective of the greater contemplated exposure?
 (4) Which company insured the particular risk as an 'incident' of its object, and which policy appears to cover the particular car and the risks inherent in using the car for contemplated 'business operations' uses?"