760 P.2d 571

**AMERICAN INDEMNITY INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**CODE ELECTRIC CORPORATION, Aztec Equipment Corporation, Aztec Rental Corporation, G & J Properties, Arizona corporations; Rollin E. Barkley and Margaret Barkley, husband and wife; J.M. Fowler and Jane Doe Fowler, husband and wife, Defendants–Appellees.**

No. 1 CA–CIV 9259.

Court of Appeals of Arizona, Division 1, Department D.

March 15, 1988.

Review Denied Sept. 14, 1988.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.A. by Scott A. Salmon and Larry L. Smith, Phoenix, for plaintiff-appellant.

Treon, Strick, Lucia & Aguirre, P.A. by Anthony R. Lucia, William W. Holder and Teri L. Kessel, Phoenix, for defendants-appellees.

## OPINION

FROEB, Presiding Judge.

The sole issue raised in this appeal is whether the policy of insurance furnished by Appellant American Indemnity Insurance Company (American Indemnity) to certain of the appellees in this case provided liability coverage for a pickup truck owned by Code Electric Corporation (Code Electric) while it was being driven by an

Aztec [1] employee under the policy's "hired auto" provision, which includes borrowed vehicles.

In an underlying tort action, Rollin E. Barkley and his wife Margaret sued for injuries Barkley received when a 1972 Ford pickup truck driven by Aztec employee J.M. Fowler and owned by Code Electric collided with their vehicle. American Indemnity then filed this action seeking a declaratory judgment binding against the Barkleys, the Fowlers, and the named insureds under its insurance policy, that the policy provided no coverage for the vehicle involved in this accident and that it owed no duty to defend the suit. Cross motions for summary judgment were filed. The trial court granted the defendants' motion for summary judgment and entered judgment against American Indemnity, finding that the truck was a "borrowed" truck and therefore was covered under the policy. This appeal by American Indemnity followed.

The parties stipulated, and the trial court found, that there were no genuine issues of material fact presented in this case. The facts consist of the allegations in the pleadings, the deposition and affidavit testimony of an owner of Aztec and Code Electric, Eugene Tschumy, and the deposition testimony of the comptroller for the two companies, Donald Elliott. A summary of the relevant facts follows.

The vehicle in question in this case had been purchased by Code Electric in 1972. In 1976 or 1977, the two owners of Code Electric began another corporation, Aztec. Each of the companies had vehicles with its own logo on them but would borrow the other's vehicles when the need arose. By the end of 1980 or early 1981, a few vehicles to which Code Electric held title, including the 1972 pickup, had Aztec logos displayed on them and were being used primarily by Aztec. For several years through the time of the accident, the 1972 pickup had displayed the Aztec logo on it and had been used approximately 90 per-

---

**1.** Although two companies using "Aztec" as part of their name are named in the pleadings and in the insurance policy involved herein, the parties do not distinguish between them and refer merely to "Aztec" throughout the appellate and lower court proceedings. We will do the same in this decision.

cent of the time by Aztec with Code Electric using it approximately 10 percent of the time. Tschumy acknowledged that the vehicles titled to Code Electric but used primarily by Aztec were treated as vehicles owned by Aztec. Since the same two people owned the same interest in both companies, the owners were unconcerned with which company held title and felt that it was not worth the expense and paperwork to change title. Tschumy stated that at any time he and the other owner could have decided to put the primary use of the truck back with Code Electric, but he also acknowledged that there had never been any plans to do so.

On March 14, 1984, Aztec's employee Fowler was involved in the accident with Barkley while driving the 1972 pickup on Aztec business. American Indemnity had issued a liability insurance policy on July 14, 1983, which was in effect at the time of the accident and which listed both Aztec and Code Electric among the named insureds of the policy. The policy provided coverage for three groups of vehicles. First, it provided coverage for "SPECIFICALLY DESCRIBED AUTOS" consisting of "[o]nly those autos described in ITEM FOUR [those autos you own which are not of the private passenger type] for which a premium charge is shown...." The second group of covered vehicles were "HIRED AUTOS ONLY" defined as "[o]nly those autos you lease, hire, rent or borrow" but not including autos leased, hired, rented or borrowed from employees or members of their households. The final group of covered vehicles were those falling outside of the above two groups, but which are used "in connection with your business," including autos owned by employees for "your business or your personal affairs." The insureds chose these coverages from a list of nine types of coverages and paid premiums accordingly. The policy defined "you" and "your" to mean "the person or organization shown as the named insured," which included both Code Electric and Aztec. It defined "auto" to mean "a land motor vehicle, trailer or semi-trailer designed for travel on public roads."

The 1972 pickup had not been included on the list of specifically described autos owned by the named insureds. The appellees concede that the pickup is covered by the policy only if the provision extending coverage for "borrowed" vehicles applies.

The appellees argue that by virtue of the fact that Code Electric was the titled owner of the truck and Aztec was using the truck with Code Electric's consent, the truck was "borrowed" within the meaning of the policy. The appellees point out that Aztec would have given the truck back to Code Electric if it had asked for it. Therefore, appellees argue that the truck fits within this definition despite the fact that Aztec had been the principal user of the truck for several years. Appellees rely on two cases in which courts have found "hired or borrowed auto coverage" to exist where vehicles had been borrowed under reciprocal borrowing agreements between two companies. *See, e.g., Miller v. National Farmers Union Property and Casualty Company,* 470 F.2d 700 (8th Cir.1972); *Michigan Mutual Liability Company v. Hoover Brothers, Inc.,* 96 Ill.App.2d 238, 237 N.E. 2d 754 (1968).

Relying on *Roberts v. State Farm,* 146 Ariz. 284, 286, 705 P.2d 1335, 1337 (1985), appellees argue that an insurer who wishes to limit its coverage under a policy must employ language which clearly and distinctly conveys to the insured the nature of the limitation. They contend that since American Indemnity did not provide a limitation on the length of time a vehicle could be borrowed and did not specify that a vehicle could not be borrowed from the other named insureds, it cannot deny coverage for the vehicle Aztec had "borrowed" from Code Electric regardless of the length of the borrowing.

We agree with appellees. The facts of the case stretch the conceptual limits of the term "borrow," yet we find that the term is broad enough to include the present situation. The notion that our ruling could set the stage for future fraud regarding vehicle insurance does not escape our concern, but the problem can best be met by the drafting of policy provisions which deal with the issue.

We note, first, there was no actual transfer of ownership of the 1972 pickup to

Aztec. Code Electric remained the titled owner. In legal contemplation, Aztec was a bailee. Secondly, we hold that "borrowing" does not require an agreement to return the property at a fixed or certain time. A "borrowing" may be for an indefinite period and may last until either the borrower decides to return the property or the lender requests its return. *See Miller v. National Farmers Union Property and Casualty Co.*, 470 F.2d 700, 705 (8th Cir. 1972). In *Miller*, the court found that the truck was loaned to the insured, notwithstanding that the insured had used the truck for an extended period of time. Appellant refers us to no case holding otherwise.

As a further point, we note that the 1972 pickup was used not only by Aztec during the period involved, but Code Electric also used it about 10 percent of the time. This further indicates the intent of Code Electric to maintain its interest in the vehicle and refutes the suggestion that Code Electric did not expect its return. The fact that Aztec placed an Aztec logo on the truck is not determinative of ownership.

Appellant argues for the first time on appeal that Code Electric made a gift of the truck to Aztec. We see no merit to this claim. Moreover, matters not raised in the trial court cannot be raised for the first time on appeal. *Dillig v. Fisher*, 142 Ariz. 47, 688 P.2d 693 (App.1984).

In conclusion, we hold that even though the term "borrowed" is not defined in the insurance policy, its meaning is plain. At the time of the accident, Code Electric had "loaned" and Aztec had "borrowed" the 1972 pickup truck. Its use, therefore, was insured by appellant under the policy. The judgment is affirmed. The appellees are awarded attorney's fees in an amount to be determined upon compliance with rule 21(c), Arizona Rules of Civil Appellate Procedure.

HAIRE, C.J., and EUBANK, J., concur.