## BUDDY CAGE *v.* LITCHFIELD MUTUAL INSURANCE COMPANY

Superior Court Judicial District of File No. CV960536847
New London

Memorandum filed September 11, 1997

*Faulkner & Boyce,* for the plaintiff.

*Howard, Kohn, Sprague & Fitzgerald,* for the defendant.

### I

### INTRODUCTION

HENDEL, J. This is an action brought by the plaintiff, Buddy Cage, against the defendant, Litchfield Mutual Insurance Company, in which the plaintiff claims damages based on breach of contract with respect to an insurance policy issued by the defendant to the Mystic Valley Hunt Club (Hunt Club), negligence, direct suit against an insurer pursuant to General Statutes § 38a-321, bad faith and fraud. The defendant asserted special defenses, including the so-called "horse exclusion" in the insurance policy, breach of the insured's obligations under the policy and failure to comply with the terms of the policy.

## II

## FINDINGS OF FACT

Based on the evidence presented to the court, the court makes the following findings of fact. The Hunt Club is a corporation doing business on property located at 645 Long Cove Road in Gales Ferry. At all times pertinent to this action, the Hunt Club was a commercial stable and its sole business was the boarding and training of horses and the teaching of horseback riding to the public.

Stanley Grab, doing business as Investment Counseling Service was the insurance agent of the Hunt Club. For several years prior to March 21, 1991, Grab structured an insurance program for the Hunt Club. The program called for a farmowner's policy, a stable liability policy, a horse van policy and a workers' compensation policy. This program was in effect for the policy period from March 21, 1991 to March 21, 1992, and, for that policy period, Grab billed to the Hunt Club separate premiums for the farmowner's policy and the stable liability policy and those separate premiums were paid to him in full by the Hunt Club.

For the policy period from March 21, 1991 to March 21, 1992, Grab purchased for the Hunt Club, through the Milford Insurance Agency, a policy of insurance issued by the defendant. The policy was described as a "farmowner's policy" and included comprehensive personal liability coverage with limits of $300,000 per occurrence and a horse exclusion endorsement form ML-20A. The horse exclusion endorsement excluded from the comprehensive personal liability coverage of the policy "any Liability for personal injury or property damage arising out of the ownership, care, boarding or use of horses, donkeys, mules or any other similar animal."

The premium received by the defendant for the policy which it issued was payment for a farmowner's policy with a horse exclusion endorsement and the premium did not include any payment for a stable liability policy. Approximately three specialized insurance carriers issued stable liability policies and it was the usual practice in the case of a commercial stable for the defendant to issue a farmowner's policy with a horse exclusion endorsement to the commercial stable and for one of the specialized insurance carriers to issue a stable liability policy to the commercial stable. Grab attempted to secure a stable liability policy for the Hunt Club from one of the specialized insurance carriers for the period from March 21, 1991, to March 21, 1992, but failed to do so and no stable liability policy was in effect for such period.

On February 12, 1992, the plaintiff was lawfully on the property of the Hunt Club for the purpose of transporting and helping a horseback riding student engaged in riding lessons with the Hunt Club. While walking through the barn area on the premises of the Hunt Club and while in a passageway in the barn area, a bale of hay was thrown down from the loft by a Hunt Club employee. The bale of hay hit the plaintiff on the head and caused him personal injuries.

On or about October 23, 1992, the plaintiff brought an action against the Hunt Club, which sought monetary damages for the personal injuries he sustained in the accident of February 12, 1992. The lawsuit was filed with the Superior Court for the judicial district of New London at New London and was assigned docket number CV9205252615S.

Subsequent to the accident of February 12, 1992, the Hunt Club notified the defendant of the personal injuries sustained by the plaintiff and of the lawsuit instituted by him. The defendant disclaimed coverage on the

grounds of the horse exclusion endorsement and reserved its rights under the policy, but retained counsel to defend the lawsuit on behalf of the Hunt Club. The counsel retained by the defendant provided a defense to the Hunt Club in the lawsuit.

On September 29, 1995, the court, *Hurley, J.*, entered a judgment by stipulation in the plaintiff's lawsuit for the plaintiff to recover from the Hunt Club the sum of $95,000 without costs or interest.

On December 7, 1995, the Hunt Club assigned to the plaintiff all its rights, title claims and interest, legal and equitable, in and to any and all contract rights, tort claims and causes of action which it had against the defendant.

By letter dated September 22, 1980, the defendant filed with the insurance department of the state of Connecticut thirteen exceptions to AAIS farmowner's filing number FO-80-17, including number thirteen to add mandatory endorsement ML-20A to farmer's comprehensive personal liability insurance. The endorsement read: "It is agreed that the insurance does not apply to bodily injury or property damage arising out of the maintenance, ownership, or use of horses."

By letter dated December 19, 1980, Francis H. Gammon, principal examiner in the ratings division of the insurance department of the state of Connecticut (insurance department), wrote the defendant the following: "We question the far reaching effect the Horse Exclusion Endorsement, #ML-20A, might have on your policyholders. We have accepted similar forms that exclude coverage for horses owned by others, but a farmer should expect liability coverage for horses owned by the insured. Otherwise your filing of September 22, 1980 is acceptable."

By letter dated December 22, 1980, the defendant responded to Gammon's letter and stated: "By way of

explanation, it is our feeling that horses are a liability item that deserves additional premium for coverage. . . . Secondly, we also find that a large percent of our insureds with horse operations have the horse liability coverage provided through a market such as Rhulan or other surplus lines broker."

By letter dated April 25, 1997, the defendant informed the insurance department that it could find no indication that the ML-20A (10/86) exclusion was ever filed with the insurance department. The defendant submitted the ML-20A (10/86) exclusion with its letter and requested approval effective at the earliest possible date and permission to leave the form attached to its existing policies.

By letter dated April 29, 1997, the insurance department informed the defendant as follows: "With reference to your letter dated 25 April, 1997, in accordance with the provisions of [General Statutes] § 38a-676, Form ML-20A (10/86) is recorded effective April 28, 1997. The company's filing of Form ML-20A (10/86) corrects the company's noncompliance with the provisions of [General Statutes §§] 38a-663 to 38a-697, and the company may leave that Form ML-20A (10/86) attached to its existing policies. At this time, the [insurance] [d]epartment will not invoke any penalty or fine with respect to the noncompliance, based on our understanding that this is an inadvertent act and an exception to the company's customary compliance process."

On February 12, 1992, the date of the plaintiff's accident at the Hunt Club property, the horse exclusion policy was not filed with the insurance department.

### III

### DISCUSSION OF LAW

In view of the foregoing findings of fact, the court finds that there is no basis to hold the defendant liable

to the plaintiff for negligence, bad faith or fraud. The only basis upon which the defendant may be liable to the plaintiff is for breach of contract with respect to the insurance policy issued by the defendant to the Hunt Club under the assignment of December 7, 1995, of the rights of the Hunt Club to the plaintiff or under the direct suit brought by the plaintiff against the defendant pursuant to § 38a-321.[1]

With respect to the plaintiff's claims of breach of contract and direct action under § 38a-321, the only issue for determination by the court is whether the failure of the defendant to file the horse exclusion policy endorsement with the commissioner of insurance renders the endorsement void and enenforceable.

Section 38a-676 (c) requires an insurer to file the form of any insurance policy and any endorsement modifying such policy with the insurance commissioner prior to the issuance of the policy and endorsement to an insured. Section 38a-676 (c) provides: "The form of any insurance policy or contract the rates for which are subject to the provisions of sections 38a-663 to 38a-697, inclusive, other than fidelity, surety or guaranty bonds, and the form of any endorsement modifying such insurance policy or contract, shall be filed with the Insurance Commissioner prior to its issuance. The commissioner shall adopt regulations in accordance with the provisions of chapter 54 establishing a procedure for review

---

[1] General Statutes § 38a-321 provides in pertinent part: "Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

of such policy or contract. If at any time the commissioner finds that any such policy, contract or endorsement is not in accordance with such provisions or any other provision of law, he shall issue an order disapproving the issuance of such form and stating his reasons therefor. The provisions of section 38a-19 [hearings on orders of commissioner] shall apply to any such order issued by the commissioner." While the language of the statute is mandatory, the statute lacks any provision regarding the effect of the failure of an insurer to make the requisite filing.[2] The decisional law in Connecticut is also devoid of guidance on this issue.[3] Thus, the court is presented with an issue of first impression.

---

[2] General Statutes § 38a-680 sets forth penalties for the failure of insurers to comply with final orders of the insurance commissioner and provides that: "Any person, insurer, organization, group or association who fails to comply with the final order of the Insurance Commissioner pursuant to sections 38a-663 to 38a-697, inclusive, shall be fined not more than one thousand dollars, but if such failure be wilful, not more than ten thousand dollars, or imprisoned not more than one year or both. The commissioner shall collect the amount so payable and such penalties may be in addition to any other penalties provided by law." No such order is at issue in the present case.

The earlier version of § 38a-680 was, however, more broad in scope; it did not specify penalties solely for noncompliance with final orders. Rather, it provided, in pertinent part, that "[a]ny person who, or any organization which, violates *any provision* of sections 1255i to 1270i, inclusive, shall be fined not more than one thousand dollars. . . ." (Emphasis added.) General Statutes (Sup. 1947) § 1269i.

[3] In *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania,* 231 Conn. 756, 653 A.2d 122 (1995), the plaintiff appealed the trial court's grant of summary judgment in favor of the defendants. The plaintiff argued that the trial court improperly denied it the opportunity to obtain discovery regarding whether the defendants had filed with the state insurance commissioner certain pollution exclusions, on which the defendants were relying to deny coverage. The plaintiff asserted that if the defendants failed to file the exclusions, the exclusions would be invalid and the plaintiff would be entitled to summary judgment in its favor on the issue of the defendants' duty to defend. The court upheld the trial court's decision that the plaintiff waived its right to assert this claim by failing to raise it either in its memorandum in support of its motion for summary judgment or in its memorandum in opposition to the defendants' motion for summary judgment. Id., 787–88. The court

The majority of jurisdictions which have addressed this issue have concluded that the failure to file the policy or endorsement does not render it invalid. In a number of cases, the courts have considered significant the existence of a savings statute or other statute providing penalties for the failure to file. In other cases, the court found significant the lack of a specific statutory provision for voidance.

In *Gary* v. *American Casualty Co. of Reading, Pa.*, 753 F. Sup. 1547, 1551 (W.D. Okla. 1990), the court held that an insurer's failure to file an endorsement with the Oklahoma insurance board did not render the endorsement void or unenforceable. The court noted that the statute which proscribed issuance of an unapproved endorsement did not state that such endorsements would be void or unenforceable. Thus, the court declined to engraft upon the statute "language imposing a drastic sanction which the Oklahoma legislature knew how to use and did not." Id.

The court also found significant the fact that the Arizona statute, from which the Oklahoma statute was derived, did not "expressly provide that endorsements delivered or issued in violation of that statute are void and that the Arizona Supreme Court has interpreted the predecessor of that statute as leaving a policy issued in violation of the filing requirement enforceable as issued but subjecting the issuer to a fine." Id., 1552, citing *Southern Casualty Co.* v. *Hughes*, 33 Ariz. 206, 212, 263 P. 584 (1928). The court acknowledged that the Oklahoma Supreme Court never had occasion to consider whether insurance policies or endorsements not filed with the state insurance commissioner are enforceable. *Gary* v. *American Casualty Co. of Read-*

found that because the cases relied on by the plaintiff did not "discuss the consequences of an insurer's failure to file an exclusion" they were insufficient to raise a claim that such failure rendered the exclusion void. Id., 787.

*ing, Pa.*, supra, 753 F. Sup. 1552. The court noted, however, the Oklahoma Supreme Court decision in *Roark* v. *Shelter Mutual Ins. Co.*, 731 P.2d 389 (Okla. 1986), in which the court reversed a trial court's decision to exclude from evidence an unfiled insurance application form because the court was unpersuaded that the Oklahoma legislature intended that result. On the basis of *Southern Casualty Co.* and *Roark*, the *Gary* court concluded that "the Oklahoma Supreme Court would hold, if confronted with the issue, that failure to file an endorsement with the state board or commissioner does not render the endorsement void but subjects the issuer to a regulatory sanction imposed by the board or commissioner." *Gary* v. *American Casualty Co. of Reading, Pa.*, supra, 1552.

While the Oklahoma Supreme Court has not addressed the issue of the effect of unfiled insurance policies and endorsements, the Oklahoma Court of Appeals did in *Hill* v. *Agri-Risk Services*, 827 P.2d 904 (Okla. App. 1992). In *Hill*, the plaintiff procured insurance from the defendant insurers for two horses. When one of the horses died as a result of an excluded condition, the insurers denied coverage. The trial court granted summary judgment in favor of the insurers despite the plaintiff's claim that the endorsement was invalid because the insurers did not file it with the state insurance commissioner. Id., 906. The Court of Appeals affirmed the trial court stating that the purpose of the statute requiring approval is one of " 'inclusionary' intent, i.e., as favoring the grant of coverage where an insurer has attempted to avoid an otherwise statutorily mandated requirement for coverage." Id. The facts of the case established that neither the policy nor the endorsement was submitted to the insurance commissioner for approval. The court refused to find, however, that both the policy and the endorsement were unenforceable because to do so would contradict the " 'inclusionary' " purpose of the insurance code. Id.

In addition, the court determined that the trial court properly construed and applied all terms of the policy. Id. An Oklahoma statute provided that a policy or endorsement which was otherwise valid but which contained a provision not in compliance with the Oklahoma insurance code would not be rendered invalid but would be applied " 'in accordance with such conditions and provisions as would have applied had such policy . . . or endorsement been in full compliance with the Code' . . . ." Id., quoting Okla. Stat. tit. 36, § 3620 (1981); see also *Highlands Ins. Co.* v. *American Marine Corp.*, 607 F.2d 1101, 1104 (5th Cir. 1980) (insurer's failure to file insurance policy endorsement does not void policy under Louisiana statute providing for validity of non-complying forms).

Later, in *Federal Deposit Ins. Corp.* v. *American Casualty Co. of Reading, Pa.*, 975 F.2d 677, 683 (10th Cir. 1992), the Tenth Circuit Court of Appeals stated that "we do not believe that the Oklahoma legislature intended that otherwise lawful exclusions be voided simply for failure to comply with [Okla. Stat. tit. 36, § 3610 (A) (1981)]. Voidance of exclusion to an insurance policy is a severe penalty which alters the very terms of the deal between the parties. It requires the insurer to provide coverage for uncontracted risk, coverage for which the insured has not paid."

The plaintiff in *Federal Deposit Ins. Corp.* argued that a "regulatory exclusion" in a director and officer's liability policy was void because the insurer did not seek approval of the exclusion until years after its use, although the Oklahoma insurance board later approved substantially similar exclusions filed by another insurer. In deciding that the exclusion was not void, the court noted that other sections of the Oklahoma insurance code contained voidance provisions and that the legislature's failure to provide such a provision in relation to the filing requirement indicated that it did not intend

such a severe sanction. Id. Thus, the court held that failure to comply with the filing requirement did not void the exclusion. Id., 682–83.

In *Great Lakes Container Corp.* v. *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 727 F.2d 30 (1st Cir. 1984), the plaintiff appealed from a summary judgment ruling that no coverage was provided under a comprehensive general liability policy which contained an exclusion for property damage arising out of the discharge of pollutants. The plaintiff contended that the exclusion was inoperative because the defendant failed to obtain approval of the policy form containing the exclusion, as required by New Hampshire law. Id., 31. The court disagreed, finding "nothing in the relevant statutes suggesting that an automatic nullification of a policy exclusion results from failure to obtain approval of a policy form as a whole." Id., 32. New Hampshire statutory law prescribed penalties for failure to obtain approval, such as a fine, or suspension or revocation of an insurer's license. The court noted that the commissioner took no action in the case and stated that the plaintiff provided no criteria for voiding only the exclusion and not the entire policy. Id. Thus, it concluded that the exclusion was part of the policy at the time suit was brought. Id.

In *Resolution Trust Corp.* v. *Hedden,* 879 F. Sup. 600 (N.D. Miss. 1995), the defendants, officers of a bank placed into receivership, contended that their insurance carrier, a third party defendant in the action, failed to submit for approval an insurance policy exclusion upon which it relied to deny coverage. The defendants claimed, therefore, that the policy was unenforceable. The court noted that the insurer had submitted and received approval of a similar regulatory exclusion which was "broader, thereby affording more protection, than the one actually used in the policy at issue." Id., 602. The court determined that "[t]here was not an absolute failure to file" and it was not a situation where

the insurer was seeking to profit "from its own wrong." Id. The court stated that the legislature did not provide for voidance of policies for failure to file and that the court would not "stand in place of the Mississippi legislature to enforce such a penalty." Id., 603. Under the law in effect at that time, the failure of an insurer to submit policies for approval subjected the insurer to a fine of up to $1000 per violation.

In *National Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Ambassador Group, Inc.*, 157 App. Div. 2d 293, 298, 556 N.Y.S.2d 549 (1990), the court held that the plaintiff's failure to file an endorsement with the New York state superintendent of insurance did not void the subject policy exclusion. According to the court, New York law provided penalties for failure to file. Id. In addition, the court stated that the exclusion would be void only if its substantive provisions were inconsistent with other statutes or regulations, which in this case they were not. Id., 298.

In *Elston* v. *Shell Oil Co.*, 376 F. Sup. 968, 975–76 (E.D. La. 1973), aff'd without opinion, 495 F.2d 1371 (5th Cir. 1974), the court concluded that the failure to file an endorsement does not render the endorsement ineffective. The court stated that "approval by the insurance commissioner constitutes an administrative ruling that the policy and its endorsements [conform] to the requirements of the law but a failure of the company to file a form and obtain its approval should not destroy the terms of a contract of insurance which it in fact has made." Id., 976. The court stated that "both the insurer and the named insured desired and intended that this restrictive endorsement be attached to this policy. . . . We do not think that the mere neglect of some clerk, employed by the insurer or by the insurance broker, in failing to file this endorsement with the insurance commissioner bars the insured or the insurer from excluding this type of coverage from its policy." Id.

The persuasive value of those cases in which the court relied upon the existence of legislatively imposed penalties to conclude that a policy or endorsement was not void is limited. Connecticut does not provide for such penalties in either its General Statutes or in the applicable insurance regulations.[4] It is noteworthy, however, that in its letter to the defendant regarding the noncompliance with § 38a-676, the insurance department stated that it would not invoke any "penalty or fine with respect to the noncompliance, based on our understanding that the failure to file was an inadvertent act . . . ." The department's reference to a fine lends support to a conclusion that the endorsement is not void, as that issue is discussed in the aforementioned cases. The inclusion of a reference to a penalty as well as a fine, however, makes this conclusion less compelling. The department distinguished between the two sanctions, thereby indicating the potential for some action other than imposition of a fine for failure to file a policy or endorsement under § 38a-676. Nevertheless, voidance is a drastic measure which this court refrains from imposing in the absence of legislative direction or binding authority to the contrary. As previously noted, the Regulations of Connecticut State Agencies contain no provision for penalties or fines. In addition, the legislative history of § 38a-676 does not illuminate the legislature's intent with respect to the consequences for failure to file.

The facts of the present case support a conclusion that the endorsement should not be held invalid. The Hunt Club contracted for insurance for its horse operations by purchasing through its insurance agent a farmowner's policy and a stable liability policy and paid separate premiums to the agent for each of these policies. Although the Hunt Club may have correctly believed that it procured liability coverage for claims

---

[4] See Regs., Conn. State Agencies § 38a-676-1 et seq.

of personal injury, there are no facts to support a finding that such coverage was provided by the policy issued by the defendant. The premium paid for the farmowner's policy reflected the exclusionary horse endorsement. As noted in *Federal Deposit Ins. Corp.* v. *American Casualty Co. of Reading, Pa.*, supra, 975 F.2d 683, voidance of the endorsement would require the defendant to provide coverage for a risk for which it was not paid. In fact, the stable liability policy which, through no fault of the defendant, was never issued, would have provided the coverage which the plaintiff now seeks.

The defendant argues that the insurance department's subsequent approval of the endorsement and its permission to leave the endorsement on existing policies suggests that the approval had retroactive effect. While the court does not agree that the insurance department's April 29, 1997 approval letter necessarily supports a finding of retroactive effect, it is noteworthy that the department approved a similar horse exclusion endorsement in 1980, the ML-20A (10/80). Under the holding of *Resolution Trust Corp.* v. *Hedden*, supra, 879 F. Sup. 602, prior approval of a similar endorsement militates against a finding that the endorsement is unenforceable, althought the court is mindful that "[i]t would be inequitable to retroactively apply a later decision in a way which would limit the expected risks of the insured." *Preferred Risk Mutual Ins. Co.* v. *Manchester Ins. & Indemnity Co.*, 467 F.2d 1230, 1234 (7th Cir. 1972).

The cases cited by the plaintiff represent the minority position and are in many instances factually dissimilar from the present action. In *Miller* v. *National Farmers Union Property & Casualty Co.*, 470 F.2d 700, 704 (8th Cir. 1972), the court concluded that an unfiled endorsement was void. Section 70.38 of the Minnesota Statutes prescribed monetary penalties for issuance of a policy not filed first with the insurance commissioner and

provided that " '[s]uch penalties may be in addition to any other penalty provided by law.' " Id., 703. The court found that "[o]ther courts which have faced the question of the effect of an unfiled or unapproved policy or provision have generally held that portion of the policy which has not been filed void." Id., 704, citing *Workman v. Great Plains Ins. Co.*, 189 Neb. 22, 200 N.W.2d 8 (1972); *American Mutual Fire Ins. Co. v. Illingworth*, 213 So. 2d 747 (Fla. App. 1968); *Travelers Ins. Co. v. Chicago Bridge & Iron Co.*, 442 S.W.2d 888 (Tex. Civ. App. 1969).

The *Miller* court concluded that the primary purpose of the statute requiring filing of policies and rating plans was "not the approval of policy forms but the approval of premium charges." Id., 703. In the present case, however, the premium charged to the Hunt Club for the farmowner's policy by the defendant was based on the terms of that policy, including the exclusionary endorsement.

*Workman v. Great Plains Ins. Co.*, supra, 189 Neb. 22, is distinguishable on its facts. At issue was whether the coverage of an automobile liability insurance policy extended to a sister of the named insured, who was driving the insured vehicle with permission. The basis insurance policy and the endorsement were approved by the Nebraska department of insurance in accordance with Nebraska law. The policy contained an unrestricted omnibus clause which included as an insured any person using the automobile with the permission of the named insured. The printed endorsement form permitted the exclusion of named individuals. The insurance company altered the form by omitting from it the words " 'the following named person' "; id., 23; and adding to it the words " '[a]ll other drivers except the named Insured.' " Id., 24. Thus, the endorsement purportedly excluded from coverage all persons except the named insured, notwithstanding the language of the

omnibus clause. The insured's vehicle was involved in an accident while it was being driven by the insured's sister and a question arose regarding whether coverage extended to the insured's sister.

The defendant insurer argued that there was no state statute and therefore no public policy which prohibited the use of the altered endorsement. A Nebraska law did provide, however, that no insurance policy could be issued in the state unless it was filed with and approved by the department of insurance. The court found, based on testimony of a representative of the department, that the printed endorsement form was within the department's guidelines for approval, but the endorsement as altered was not. The court determined that the alterations were inconsistent with the language of the printed endorsement and with the omnibus clause in the principal policy form. Thus, the court upheld the trial court's finding that the altered endorsement was not in the form approved by the insurance department, was contrary to the public policy of the state of Nebraska and was void. Id., 28.

In the present action, there is no issue regarding the effect of an alteration on an approved policy endorsement. Furthermore, in *Equity Mutual Ins. Co.* v. *Allstate Ins. Co.*, 190 Neb. 515, 520, 209 N.W.2d 592 (1973), the court stated: "We did not hold that the endorsement in the Workman case was void merely because it had not been filed with and approved by the Department of Insurance, but because it was in violation of public policy and could not be approved by the Department of Insurance. . . . This case is not the Workman case. The endorsement here was not deceptive or misleading. Neither was it ambiguous or conflicting. It was not in violation of public policy. It met all the requirements for approval by the Department of Insurance, and was in fact later approved."

The case of *Linkens* v. *Furman*, 52 Ill. App. 2d 1, 201 N.E.2d 645 (1964), is inapposite. In that action, the insurer claimed that an endorsement to an automobile liability policy limiting coverage to persons over twenty-five years of age was effective to preclude coverage under the facts of that case. The court determined, however, that the department of insurance expressly disapproved of the use of that endorsement. The court rejected the insurer's claim that the department did not have the authority to do so and stated that to hold otherwise would render the filing provisions of the statute ineffective to accomplish their "evident function of public protection." Id., 7.

In *American Mutual Fire Ins. Co.* v. *Illingworth*, supra, 213 So. 2d 747, the insurer did not file with the Florida insurance commissioner an exclusionary endorsement of the same type as that attached to the subject policy prior to the policy's issuance. In determining that the failure to file and receive approval of the form on which the endorsement was written rendered the endorsement null and void, the court relied on *Commercial Union Assurance Co., Ltd.* v. *Preston*, 115 Tex. 351, 282 S.W. 563 (1926). *American Mutual Fire Ins. Co.* v. *Illingworth*, supra, 749. The court noted that *Commercial Union Assurance Co., Ltd.*, held that an endorsement added to a fire insurance policy without approval of the state insurance commission was void, " 'otherwise true effect cannot be given to the prohibition that no other forms be used than those established or approved by the commission.' " Id., 750, quoting *Commercial Union Assurance Co., Ltd.* v. *Preston*, supra, 355–56. The court stated that the pertinent Florida statute indicated that "the protection of the public is the primary purpose for the existence of the statute." *American Mutual Fire Ins. Co.* v. *Illingworth*, supra, 750. The court determined that "[s]ince it was the failure of appellant to have the endorsement approved, then the appellant's action

must be construed strongly against appellant and in favor of appellees." Id.

While *Illingworth* sets forth valid reasons for voidance of an unapproved endorsement, the court was acting under a clear directive on the legislature's purpose for the filing requirement. In addition, voidance of an unfiled endorsement is not the only method by which to address the concern that true effect cannot otherwise be given to the terms of a filing statute. In this court's opinion, the imposition of a monetary fine or a penalty other than voidance is sufficient to protect the efficacy of § 38a-676 (c).

For the aforementioned reasons, the court finds that the horse exclusion to the insurance policy in issue was valid and the defendant is not liable to the plaintiff for breach of contract with respect to the insurance policy nor to the plaintiff under the direct suit brought by the plaintiff against it pursuant to § 38a-321.

## IV

## CONCLUSION

Accordingly, the court renders judgment for the defendant.