**Norman J. SAWYER, as Trustee for the next of kin of Paul N. Sawyer, deceased, and Sandra J. Sawyer, Appellants,**

v.

**MIDLAND INSURANCE COMPANY, et al., Respondents,**

**Western National Mutual Insurance Company, Defendant.**

**No. C1–85–1757.**

Court of Appeals of Minnesota.

March 11, 1986.

Review Granted May 16, 1986.

Philip Pfaffly, Dale M. Wagner, Moss & Barnett, Minneapolis, for appellants.

Robert W. Kettering, Arthur, Chapman & Michaelson, Minneapolis, for respondents.

Susan D. Thrumer, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for defendant.

Heard, considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

This appeal is from a judgment entered in a declaratory judgment action denying a claim for uninsured or underinsured motorist benefits. Appellant Norman J. Sawyer, the duly appointed trustee for the surviving spouse and next of kin of Paul Sawyer, contends the trial court erred in construing the insurance policy issued by respondent Midland Insurance Company; he argues that endorsements filed by Midland with the Minnesota Commissioner of Insurance but not attached to the policy become part of the contract and are enforceable. We agree and reverse.

## FACTS

In April 1981 Paul Sawyer was killed in a two-car accident while driving a vehicle owned by Genway Fleet Leasing, Inc., and leased to his employer, Pinkerton's, Inc.. The vehicle was insured by Midland Insurance Co. under a single policy insuring Genway's entire fleet of 2,500 vehicles. Endorsement # 5 of the policy provided a $250,000 deductible; endorsement # 2 specified that "[t]he limit of liability applicable to this policy is $1,000,000 per accident." Genway paid Midland premiums of $5 per month per vehicle, with a minimum annual premium of $500,000.

Pinkerton's leased 250 automobiles nationwide from Genway, of which ten were registered and garaged in Minnesota. Paul Sawyer was an insured under the Midland policy as a person "using with [Genway's] permission a covered auto." A rider to the lease between Pinkerton's and Genway provided Genway would furnish "$1,000,000 public liability, property damage, uninsured motorists, etc. insurance for authorized Pinkerton drivers * * *." Pinkerton's paid Genway $68.50 per month per vehicle for this insurance coverage.

The driver of the other vehicle, Mark Blazinski, was completely at fault; Blazinski owned no vehicles and had no personal liability coverage. The vehicle he was driving was owned by Robert Wornson, who had not obtained coverage for this particular vehicle but had previously owned another automobile insured by Dairyland Insurance Co. Dairyland initially denied coverage because of lack of consent and nonpayment of premiums, but subsequently withdrew its denial and tendered its $25,000 limits.

Before Dairyland admitted coverage, appellant had brought this declaratory judgment action claiming uninsured or underinsured motorist benefits from both Midland and Western National Mutual Insurance Co.; the latter had issued a policy to the decedent on his own personal automobile. The parties stipulated to certain facts. Cross-motions for summary judgment were brought.

Once Dairyland admitted coverage, the vehicle driven by Blazinski was no longer uninsured within the meaning of the Western policy. *See Fryer v. National Union Fire Insurance Co.*, 365 N.W.2d 249, 254 (Minn.1985). Western was therefore dismissed from this suit and is not a party to this appeal. The only issue remaining was whether the Midland policy provided coverage based on certain uninsured motorist endorsements Midland had filed with the Minnesota Commissioner of Insurance. Although these endorsements were not attached to the Midland policy, appellant argued they were part of the contract and enforceable. The trial court disagreed and entered judgment in Midland's favor.

## ISSUES

1. Were uninsured motorist endorsements filed with the Minnesota Commissioner of Insurance but not attached to the policy part of the contract and enforceable as such?

2. Under these endorsements, was the third-party tortfeasor driving an "uninsured motor vehicle?"

3. Can uninsured motorist coverage be stacked under the Midland policy?

## DISCUSSION

### I

Insurance policies in Minnesota are subject to the supervision of the Commissioner

of Insurance. Minn.Stat. § 70A.06, subd. 2 (1984), provides:

No policy form shall be *delivered* or *issued for delivery* unless it has been filed with the commissioner and either (i) he has approved it or (ii) 30 days have elapsed and he has not disapproved it as misleading or violative of public policy, which period may be extended by the commissioner for an additional period not to exceed 30 days.

(Emphasis added).[1] The parties characterize the issue as involving a choice of law analysis. Appellant argues that the trial court erred in not applying Minnesota law because sufficient contacts exist to permit its application. However, the decision in this case rests not upon a choice of law analysis; rather, it rests upon interpretation of Minn.Stat. § 70A.06. *See Western National Mutual Insurance v. State Farm Insurance Co.*, 374 N.W.2d 441, 443 n.4 (Minn.1985) (resolution of case depended not upon choice of law analysis, but upon statutory construction of Minn.Stat. § 65B.50 (1984)).

In accordance with the Minnesota filing requirements, Midland had authorized the Insurance Services Organization (ISO) to file rates, rules and forms on its behalf with the Commissioner. In 1977 ISO filed two uninsured motorist endorsements, CA 2X17 ("Uninsured Motorists Insurance") and CA 2107 ("Split Uninsured Motorists Limits"). The Commissioner advised ISO that the forms did not conform to recent Minnesota Supreme Court cases regarding stacking. ISO thereupon filed amendatory CA 2124 ("Changes in Uninsured Motorists Insurance"). The Commissioner approved all three forms in April 1978. As a subscriber of ISO, Midland received a copy of all endorsements filed by ISO on its behalf and a circular explaining the endorsements.

Midland contends it is not bound by these filings; it argues it was not required to file its policy under § 70A.06 because

the policy was issued in New York and delivered to Genway in Illinois. Such a restrictive interpretation of "issued" and "delivered" is unwarranted, especially when endorsement # 5 required Midland to *"issue * * * a certificate of Insurance under the policy to each lessee of an owned automobile"* (emphasis added). A certificate of insurance was accordingly delivered to Pinkerton's at its local Minneapolis office.

Moreover, Midland voluntarily complied with the filing requirements by authorizing ISO to file forms with the commissioner on its behalf. In effect, Midland acknowledged that the Commissioner had authority to review its policies and forms. Although Midland was aware that these particular endorsements had been filed and approved, it did not object or seek to amend the endorsements to conform to its contract. It cannot now assert it should not be bound by these filings.

Midland's obligation to provide coverage in accordance with endorsements filed with the Commissioner arises not from its private contract with Genway, but from its agreement with the State of Minnesota. *See Petty v. Allstate Insurance Co.*, 290 N.W.2d 763 (Minn.1980) (obligation to provide basic economic loss benefits and to allow stacking of such benefits arises from duties imposed on insurance company under certification statute, Minn.Stat. § 65B.50, subd 1 (1978), as privilege of doing business in Minnesota, not by its private contract with the insureds). Although the purpose of the filing requirements of § 70A.06 is not the approval of policy forms but the supervision of premium and rate charges, the entire contract was subject to the Commissioner's supervision. *Miller v. National Farmers Union Property and Casualty Co.*, 470 F.2d 700, 703–04 (8th Cir.1972). Premium and rate charges can be evaluated only relative to the coverage afforded. Because the Commissioner was led to believe that Midland's

---

1. Since 1982, commercial business fleet policies, if complying with Minnesota law, have been exempt from the filing requirements of Minn.

Stat. § 70A.06. *See* Minn. R. 2700.2100–.2300 (1985) (adopted Feb. 15, 1982 as 4 MCAR § 1.9350–.9352 in 6 S.R. 1438).

premiums afforded its insureds protection as set out in the filed endorsements, Midland should be estopped from denying such coverage. We therefore conclude that the three endorsements filed with the Commissioner were part of the policy and enforceable.

## II

■ Midland asserts that even if the filed endorsements become part of the policy, they are inconsistent with the express terms of the policy, specifically endorsement # 4, a general uninsured motorist endorsement which attempts to reject uninsured motorist coverage where possible and otherwise provide only the minimum coverage required by state statute. However, endorsement # 4 was never filed with the Commissioner's office. Even if it had been filed, James P. Kelly, an insurance analyst with the Minnesota Department of Commerce, testified by deposition that it would not have been approved because it purports to reject coverage mandated by Minnesota law and fails to include all of the terms of coverage. An unfiled or unapproved policy or provision is generally considered void. *Miller*, 470 F.2d at 704 (endorsement not filed in accordance with Minn.Stat. § 70.38 (1968), the predecessor of Minn.Stat. § 70A.06 (1984), found not enforceable). We therefore conclude that endorsement # 4 is void and unenforceable.

■ As written, the Midland policy does not comply with Minnesota law; it fails specifically to provide uninsured motorist coverage for the Genway vehicles registered and garaged in Minnesota. *See* Minn.Stat. § 65B.49, subd. 4 (1984); § 65B.49, subd. 8, provides, "[a]ny coverage issued by a participating member of the Minnesota automobile insurance plan shall comply with the provisions of this section, any provisions of law or of the contract notwithstanding." To ascertain the uninsured motorist coverage provided these Minnesota vehicles, we must look to the endorsements filed with the Commissioner.

Endorsement CA 2X17 provided a number of definitions of "uninsured motor vehicle," including:

3. * * * "a land motor vehicle or trailer:"

b. For which the sum of all liability bonds or policies at the time of an accident provides at least the amounts required by the applicable law where a covered auto is principally garaged but their limits are less than the limits of this insurance.

Definition 3.b. is sometimes used to describe an underinsured vehicle. *See Fryer*, 365 N.W.2d at 254 n. 2.

If Midland's uninsured motorist limits are more than $25,000, then the Wornson vehicle driven by Blazinski is "uninsured" within this definition. The policy, however, fails specifically to define its limits of uninsured motorist coverage. Although appellant claims the express intention of the parties was to provide $1,000,000 in uninsured motorist coverage, the stipulated facts indicate otherwise:

6. Midland did not offer to Genway the opportunity to purchase $1,000,000 in uninsured motorist coverage. Likewise, no such offer was made by Midland or Genway to Pinkerton's, Inc. Had such an offer been made, Genway and/or Pinkerton's, Inc. would have rejected it in favor of the minimum ($25,000) limits.

7. Midland did not offer to Genway the opportunity to purchase underinsured motorist coverage. Likewise, no such offer was made by Midland or Genway to Pinkerton's, Inc. Had such an offer been made, it would have been rejected.

It cannot be disputed that the parties' intention was to provide and purchase $25,000 in uninsured motorist coverage.

■ Under a strict interpretation of definition 3.b. of CA 2X17, it would be impossible for *any* motor vehicle to be "uninsured" if involved in an accident with one of Genway's vehicles leased to Pinkerton's and garaged in Minnesota. The supreme court recently refused to apply such an

interpretation to an almost identical definition under North Carolina law because "liability insurance contracts should, if possible, be construed so as not to be a delusion to those who have bought them." *Hoeschen v. South Carolina Insurance Co.*, 378 N.W.2d 796, 799 (Minn.1985) (quoting *Motor Vehicle Casualty Co. v. Smith*, 247 Minn. 151, 157, 76 N.W.2d 486, 490–91 (1956)). Accordingly, we decline to construe definition 3.b. of CA 2X17 so as to eliminate totally its usefulness. To render this coverage not illusory, the Wornson vehicle must be considered an "uninsured motor vehicle" because the limit of uninsured motorist coverage is more than $25,000 under the pro-stacking language of CA 2124.

### III

■ A determination of whether stacking is appropriate requires an examination of the other two endorsements filed with the Commissioner. Endorsement 2107 is entitled "Split Uninsured Motorist Limits" and purports to prohibit stacking:

Paragraph 1 of OUR LIMIT OF LIABILITY is changed to read:

1. Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, our limit of liability is as follows:

    a. The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit shown in this endorsement for 'each person.'

(No limit was shown on the endorsement). CA 2124 was filed after CA 2107 and, as an accompanying explanatory memorandum noted, amended CA 2107 by removing its anti-stacking language:

B. Paragraph 1. of OUR LIMIT OF LIABILITY is changed to read:

1. [T]he most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations. If there is more than one covered auto our limit of liability for any one accident

is the sum of the limits applicable to each covered auto.

This language indicates an intent to allow stacking. *See Boroos v. Roseau Agency, Inc.*, 345 N.W.2d 788, 790 (Minn.Ct.App. 1984), *pet. for rev. denied*, (Minn. Dec. 12, 1984) (similar pro-stacking language interpreted to mean that the policy contemplated stacking of underinsured motorist coverage on all 39 vehicles insured by Roseau County for the benefit of its employees and for which the county paid separate premiums). *But cf. Rusthoven v. Commercial Standard Insurance Co.*, 363 N.W.2d 496 (Minn.Ct.App.1985), *pet. for rev. granted*, (Minn. May 1, 1985).

■ Like *Boroos*, one policy covers all of Genway's vehicles, and a separate premium per vehicle was paid by Genway for the benefit of Pinkerton's, one of its lessees. This premium reflects the risk being insured against, i.e., the risk of injury to the named insured, Genway, and to any person using one of Genway's automobiles with its permission. Because the decedent would have been an insured only while permissively using one of the ten vehicles leased to Pinkerton's and located in Minnesota, uninsured motorist coverage on only these vehicles should be stacked. Because the pro-stacking language of form 2124 was implied into this contract based on Midland's filings with the State of Minnesota, stacking is appropriate only for vehicles registered and garaged in Minnesota. Appellant is therefore entitled to stack uninsured motorist coverage for the ten vehicles leased by Pinkerton's and located in Minnesota.

Finally, endorsement # 5 of the Midland policy purports to provide a $250,000 deductible "with respect to all insurance afforded by the policy as a result of any one occurrence." This endorsement was not filed with the Commissioner, and the Commissioner's employee, Kelly, testified by deposition that the endorsement would not have been approved had it been filed. If this endorsement is enforced, Midland would not be required to provide any uninsured motorist benefits because no claim

would be greater than the deductible. Because this endorsement was not filed and because its enforcement would render the contract illusory, we conclude it is void. Midland is required to pay appellant uninsured motorist benefits up to $250,000.

## DECISION

Appellant is entitled to uninsured motorist coverage under the endorsement filed with the Commissioner and may stack such coverage up to $250,000.

Reversed.