Kenneth M. ANDERSON, as Personal
Representative of the Estate of Fred
W. Hedberg; et al., Appellants,

v.

MINNESOTA INSURANCE GUARANTY
ASSOCIATION, Respondent,

Employers Insurance of Wausau,
a Mutual Company, et al.,
Defendants,

The Hartford Insurance Company, St.
Paul Fire & Marine Insurance Compa-
ny, National Indemnity Co., Respon-
dents.

No. C7–93–2490.

Court of Appeals of Minnesota.

July 26, 1994.

Review Granted Sept. 28, 1994.

Maclay R. Hyde, Nicholas N. Nierengarten, Rick E. Kubler, Jonathan M. Redgrave, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for appellants.

Richard J. Chadwick, Chadwick, Johnson & Condon, Minneapolis, for The Hartford Ins. Co.

Charles E. Spevacek, Stacy A. Broman, Meagher & Geer, Minneapolis, for St. Paul Fire & Marine Ins. Co.

Charles E. Lundberg, Bassford, Lockhart, Truesdell & Briggs, Minneapolis, and Laura A. Foggan, Daniel E. Troy, Bryan Earl, Wiley, Rein & Fielding, Washington, DC for amicus curiae Ins. Environmental Litigation Ass'n.

Bradley C. Clary, Oppenheimer, Wolff & Donnelly, St. Paul, and Edward Zampino, Victor C. Harwood, III, Peter E. Mueller, Harwood Lloyd, Hackensack, NJ, for amicus curiae Aetna Cas. and Sur. Co.

Karen A. Schaffer, Asst. Dakota County Atty., Chair, Civ. Committee, St. Paul, for amicus curiae Minnesota County Attys. Ass'n.

Considered and decided by PARKER, P.J., and SCHUMACHER and HOLTAN,* JJ.

## OPINION

PARKER, Judge.

This court granted discretionary review of the district court's denial of appellants' motion to amend their complaint to add a claim for equitable estoppel. We reverse and remand.

## FACTS

At the center of this dispute is a 92–acre parcel of land (the property) in Minnetonka owned by John Hedberg and the estate of Fred Hedberg. Between the late 1930s and 1954, two acres of the property were used as the Minnetonka Township dump site (the dump site). Fred Hedberg purchased the property in August of 1946. The dump site on the property was operated by a municipal entity until about 1948 and was operated by private parties until 1954. At no time were the property's owners or any of the appellants involved in management of the dump site. After 1954, the site was no longer used as a dump.

An environmental assessment performed on the property in 1987, in preparation for development, disclosed the existence of the former dump site. Appellants notified the Minnesota Pollution Control Agency (MPCA), which has required appellants to pay for investigation and remedial actions.

Appellant Kenneth Anderson, the personal representative of the estate of Fred Hedberg, sued in federal district court, seeking contribution for costs of the cleanup from several potentially responsible parties. Three of the potentially responsible parties

brought counterclaims against Kenneth Anderson; one of those three also brought third-party actions against John Hedberg, individually and as trustee of the Dorothy E. Hedberg irrevocable trust, and against Hedberg Partners 87. Appellants tendered the counterclaims and the MPCA's claims to the respondent insurers. Each insurer denied coverage.

Appellants brought the present declaratory judgment action asserting respondents must defend and indemnify them against the counterclaims and the MPCA's claims. Appellants' claims against respondents were based on comprehensive general liability (CGL) policies with effective dates between March 10, 1963, and March 1, 1984.

The earliest CGL policies required the insurer

to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.[1]

After March 1, 1966, the CGL policies required the insurer to

pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * property damage to which this insurance applies, caused by an occurrence.

Between 1966 and 1973, "occurrence" was defined to mean

an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

From 1973 on, "occurrence" was defined to mean

an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. This language is taken from a policy issued by Employers Insurance of Wausau. Wausau has settled appellants' claims against it and is no longer participating in this appeal. The Wausau policy is, however, representative of pre–1966 policies and its language is relevant to the issue of misrepresentation.

In 1970, the Insurance Rating Board (IRB), which developed standardized policy language for stock insurance companies, introduced what has come to be called the qualified pollution exclusion clause. *See* E. Joshua Rosenkranz, Note, *The Pollution Exclusion Clause Through the Looking Glass,* 74 Geo.L.J. 1237, 1251 (1986). The IRB's proposed exclusion (footnote omitted) read:

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*Id.*[2]

Before insurers could include the qualified pollution exclusion clause in policies issued to Minnesota insureds, the provision had to be approved by the Commissioner of the Minnesota Department of Commerce. Minn.Stat. § 70A.06, subd. 2 (1969). When the qualified pollution exclusion clause was introduced, the IRB and the MIRB submitted regulatory filings on behalf of their insurer members. Individual insurers also submitted regulatory filings on their own behalf. With the regulatory filings, the IRB submitted an explanation of the qualified pollution exclusion clause which read:

> Coverage for pollution or contamination is not provided in most cases under present policies because the damages can be said to be expected or intended and thus are excluded by the definition of occurrence. The above exclusion clarifies this situation so as to avoid any question of intent. Coverage is continued for pollution or contamination caused injuries when the pollution or contamination results from an accident except that no coverage will be provided under certain operations for injuries arising out of discharge or escape of oil into any body of water.

The independent filing by the St. Paul Insurance Companies was accompanied by the same explanation. The qualified pollution exclusion was approved by the Minnesota Department of Commerce in June of 1970.

It is the explanation that accompanied the regulatory filing of the qualified pollution exclusion clause that forms the basis of appellants' equitable estoppel claim. According to appellants, respondents misled insurance regulators across the country, and specifically in Minnesota, into believing that the pollution exclusion clause was merely a clarification of existing coverage when, in fact, it was a significant reduction in coverage. The district court concluded that this court had essentially rejected appellants' equitable estoppel claim in *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.,* 480 N.W.2d 368 (Minn.App. 1992), *pet. for rev. denied* (Minn. Mar. 26, 1992), in which this court held the pollution exclusion clause was unambiguous. Accordingly, the district court ruled that extrinsic evidence was not admissible to vary the meaning of the pollution exclusion clause and denied appellants' motion to amend their complaint to add a claim for equitable estoppel. This court granted discretionary review.

### ISSUE

Did the district court abuse discretion in denying appellants' motion to amend their complaint to add a claim for equitable estoppel?

### DISCUSSION

#### *Standard of Review*

■ Whether to allow a party to amend pleadings is a decision that rests within the discretion of the district court; its decision will not be reversed on appeal absent a clear abuse of discretion. *Warrick v. Giron,* 290 N.W.2d 166, 169 (Minn.1980). Amendment should be freely allowed where justice so requires. Minn.R.Civ.P. 15.01.

---

**2.** The qualified pollution exclusion was a joint effort of the IRB and its mutual-company coun- terpart, the Mutual Insurance Rating Bureau (MIRB).

■ The district court determined that appellants' proposed equitable estoppel claim was not a viable cause of action based on this court's opinion in *Sylvester Bros.* Whether the district court's reading of *Sylvester Bros.* was correct presents a question of law; questions of law are reviewed de novo on appeal. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

■ A motion to amend may be properly denied if the party opposing the amendment would be prejudiced. *Envall v. Independent Sch. Dist. No. 704*, 399 N.W.2d 593, 597 (Minn.App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987). There is no claim of prejudice in this case.

Amendment may also be denied if the proposed amendment does not state a viable claim for relief. *See Eisert v. Greenberg Roofing & Sheet Metal Co.*, 314 N.W.2d 226, 228–29 (Minn.1982) (affirming denial to amend where damages could not be recovered under amended complaint). Whether appellants' proposed amendment states a viable claim is analogous to the issue presented by a motion to dismiss for failure to state a claim under Minn.R.Civ.P. 12.02; such a motion can be granted only if it is certain from the pleadings that no facts could be introduced to support the relief sought. *See Northern States Power v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963) (stating that a claim is sufficient if it is possible to grant the relief demanded on any evidence which might be provided). Whether a complaint states a legally viable claim is a question of law that we review de novo. *See Smith v. Smith*, 204 Minn. 255, 257, 283 N.W. 239, 240 (1939) (stating that demurrers raises an issue of law).

### Sylvester Bros.' Holding

The district court determined that appellants' equitable estoppel claim was not viable because this court, in *Sylvester Bros.*, held that extrinsic evidence was inadmissible to vary the unambiguous terms of the pollution exclusion clause. The issue in *Sylvester Bros.* was whether the word "sudden" in the phrase "sudden and accidental" meant temporally abrupt or unexpected. *Id.* at 375.

The appellant in *Sylvester Bros.*, as well as amici State of Minnesota and Honeywell, Inc., et al., argued that the drafting and regulatory history of the pollution exclusion clause were relevant to this issue. Citing the IRB explanation, the appellant and the state argued that the pollution exclusion was only intended as a clarification of the insurance industry's position that expected or intended damage was not covered. The sudden and accidental exception, according to this argument, had no temporal significance. Amici Honeywell, Inc., et al., argued the exclusion's drafting history showed that the pollution exclusion was ambiguous and should be construed against the insurers. *Id.* at 376.

The court in *Sylvester Bros.* rejected these arguments, stating:

As for the documents pertaining to the drafting history of the pollution exclusion clause, we have no use for these materials because the exception to the exclusion clause is susceptible of only one reasonable interpretation. *See Flynn v. Sawyer*, 272 N.W.2d 904, 907–08 (Minn.1978) (parol evidence is inadmissible to vary the terms of a written agreement absent ambiguity or incompleteness); *Pedersen v. United Servs. Auto Ass'n*, 383 N.W.2d 427, 430 (Minn.App.1986) (extrinsic evidence is inadmissible to construe an insurance policy absent ambiguity in the policy language).

*Sylvester Bros.*, 480 N.W.2d at 377. The court in *Sylvester Bros.* was not asked to, and did not, decide the equitable estoppel claim advanced in the present case. The court was faced with the task of determining the definition of "sudden" in the "sudden and accidental" exception to the pollution exclusion. We reject the insurers' argument that the estoppel argument made in this case and the drafting-history argument made in *Sylvester Bros.* are identical arguments with different names. The insured and amici in *Sylvester Bros.* did not seek the relief sought by appellants here. In *Sylvester Bros.*, equitable estoppel was not argued; for that reason alone, that relief could not have been granted. Instead, the appellants in *Sylvester Bros.* argued that the drafting history of the pollution exclusion clause established the meaning of the clause. This court rejected

that argument, holding the clause was unambiguous and would be interpreted according to its plain language. *Id.*

▆ The claim in the present case is that, despite the unambiguous language of the pollution exclusion clause, respondents are estopped to enforce the policy as it is written because misrepresentations were made to obtain approval of the policy. Appellants do not seek to vary the language of the pollution exclusion; they seek to void the clause. The claim is an analog to the use of extrinsic evidence to show fraud in the inducement to enter into a contract. The district court erred in holding that the decision in *Sylvester Bros.* foreclosed this argument.

### Equitable Estoppel

▆ Equitable estoppel prevents a party from asserting rights he would otherwise have where the party has acted in such a way as to induce another party, in reliance on such conduct, to change his position for the worse. *In re Estate of Peterson*, 203 Minn. 337, 342–43, 281 N.W. 275, 278 (1938).

▆ Equitable estoppel may be asserted when: (1) there has been a misrepresentation of a material fact; (2) the party to be estopped knew or should have known that the representation was false; (3) the party to be estopped intended that the representation be acted upon; (4) the party asserting equitable estoppel lacked knowledge of the true facts; and (5) the party asserting the estoppel did, in fact, rely upon the misrepresentation to his or her detriment. *Transamerica Ins. Group v. Paul*, 267 N.W.2d 180, 183 (Minn.1978).

▆ Respondents argue that appellants cannot establish reliance on the statements made to the insurance commissioner and, therefore, appellants' equitable estoppel claim fails. As a general rule, a party asserting estoppel must have changed his or her position for the worse in reliance on the conduct of the party to be estopped. *Dain Bosworth, Inc. v. Goetze*, 374 N.W.2d 467, 472 (Minn.App.1985). This court, however, has held that estoppel can be asserted by an insured based on an insurer's representations to the insurance commissioner that certain

coverage is provided by a policy. *Sawyer v. Midland Ins. Co.*, 383 N.W.2d 691, 694–95 (Minn.App.1986), *rev. granted* (Minn. May 16, 1986), *rev. vacated*, 397 N.W.2d 893 (Minn. 1987). In *Sawyer*, an insurer argued that, because the endorsements that described coverage were not attached to the policy it issued to its insured, the described coverage was not provided. *Id.* at 695. This court disagreed, stating:

> [The insurer's] obligation to provide coverage in accordance with endorsements filed with the Commissioner arises not from its private contract with [the insured], but from its agreement with the State of Minnesota. * * * Premium and rate charges can be evaluated only relative to the coverage afforded. Because the Commissioner was led to believe that [the insurer's] premiums afforded its insured protection as set out in the filed endorsements, [the insurer] should be estopped from denying such coverage.

*Sawyer*, 383 N.W.2d at 694–95.

▆ If, as appellants allege, respondents obtained approval of the pollution exclusion clause by representing to the insurance commissioner that no coverage was therein denied which was previously afforded (i.e., for gradual pollution), respondents may be held to those representations. The insurance commissioner represents the interests of Minnesota insureds in deciding whether policy provisions will be approved. A policy provision not filed with, and approved by, the commissioner is void. *Miller v. National Farmers Union Property. & Casualty. Co.*, 470 F.2d 700, 703–04 (8th Cir.1972). Similarly, if that approval can be shown to have been obtained by deceit, the provision must be held void. As in *Sawyer*, it is respondents' agreement with the State of Minnesota, not their private contracts with appellants, which obligates respondents to provide coverage in accordance with their representations made to the commissioner to obtain approval. Thus, if coverage was previously afforded for gradual pollution, it cannot be excluded by a clause the approval of which was obtained by misrepresentation of that prior coverage.

Respondents also argue that estoppel cannot be used to enlarge the coverage of an insurance policy, relying on *Shannon v. Great Am. Ins. Co.*, 276 N.W.2d 77, 78 (Minn. 1979). Respondents' argument assumes that appellants are seeking to enlarge coverage by estoppel. Appellants, however, are seeking to void a restriction on coverage by showing that the pollution exclusion clause was always intended to be a restriction on coverage and that the scope and effect of the clause were misrepresented. If the commissioner of insurance was misled regarding the extent of coverage previously afforded that was then restricted by the approved clause, voiding what the commissioner was persuaded by deception to approve does not expand coverage.

■ Next, respondents argue that there is no private cause of action for any alleged violations of Minn.Stat. § 70A. "A statute cannot create a private cause of action that the legislature has not clearly expressed or implied." *Iacona v. Schrupp*, 509 N.W.2d 185, 187 (Minn.App.1993) (*citing Bruegger v. Faribault County Sheriff's Dep't*, 497 N.W.2d 260, 262 (Minn.1993)); *see also Morris v. American Fam. Mut. Ins. Co.*, 386 N.W.2d 233, 235 (Minn.1986) (finding no private cause of action when act did not intend to create one).

■ Chapter 70A neither authorizes nor precludes a private cause of action for its violation. But if an underlying common law cause of action otherwise could exist, a statutory enactment can establish a standard of care. *See Lorshbough v. Township of Buzzle*, 258 N.W.2d 96, 102 (Minn.1977) (where underlying cause of action exists, statute may establish a standard of care in a negligence action); *Bruegger*, 497 N.W.2d at 262 (stating that a statute can establish a standard of care).

■ In this case, appellants are not seeking to hold respondents liable for violations of the statute. Appellants are claiming that respondents misrepresented the effect of the pollution exclusion to the insurance commissioner, that the insurance commissioner was the representative of all Minnesota insureds, and that respondents are equitably estopped

because of misrepresentations made to appellants' representative. The statute provides a standard of care—insurers must be truthful in their regulatory filings. That standard applies to the underlying common law claim for equitable estoppel. The insurance commissioner, as appellants' representative, is alleged to have relied on those misrepresentations to the detriment of appellants. We see no statutory impediment to allowing appellants to make their claim for equitable estoppel.

### The Policies and the Explanation

■ We turn now to the history of the CGL policies at issue. The pre–1966 policies provided coverage for property damage "caused by accident." The policies did not define "accident." Courts have held, however, that to constitute an "accident," an event must occur without the intent or knowledge of the insured. *See City of Myrtle Point v. Pacific Indem. Co.*, 233 F.Supp. 193, 197 (D.Ore.1963) (stating that acts done with intent cannot be termed an "accident"). (citation omitted). The reasonably anticipated consequences of the insured's business operations were not considered an accident. *Kuckenberg v. Hartford Accident & Indem. Co.*, 226 F.2d 225, 226 (9th Cir.1955). This definition was held broad enough to encompass gradual pollution, so long as the pollution was not expected or intended by the insured. *See Taylor v. Imperial Casualty. & Indem. Co.*, 82 S.D. 298, 144 N.W.2d 856, 859 (1966) (finding that escape and seepage resulted from unintended negligence); *Town of Tieton v. General Ins. Co. of Am.*, 61 Wash.2d 716, 380 P.2d 127, 130 (1963) (finding accident not foreseeable thus not intended).

The insurance industry did not share this view. "To insurers, only sudden discharges of pollutants, referrable to a fixed time, fell within the accident-based policy's coverage." *Through the Looking Glass*, 74 Geo.L.J. at 1241–42. Some courts agreed with the insurance industry, holding that gradual pollution was excluded from the definition of "accident." *Id.* at 1245 (citing, *inter alia, Adams v. Bryant*, 274 S.W.2d 791, 794 (Ken.1955) (requiring that "accident" be "traceable to a

definite time, place, and cause")). Most courts, however, did not require that an accident be sudden. *Through the Looking Glass,* 74 Geo.L.J. at 1246 (footnote omitted).

In 1966, allegedly in response to consumer demand, the insurance industry switched from accident-based coverage to occurrence-based coverage. *Id.* An "occurrence" was defined as

an accident, including continuous or repeated exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

*Id.* at 1246–47 (footnote omitted). This definition of "occurrence" contains no suddenness requirement. Coverage would exist for gradual pollution if the pollution were not expected or intended from the standpoint of the insured. In other words, the "occurrence" policy provided no coverage for pollution caused by the insured's regular business activities. *Id.* at 1247. In this case, because the appellants were not involved in the operation of the dump site, pollution from the dump site was not caused by appellants' regular business activities. Appellants are being sued as owners of the property, not as active polluters. *See* Minn.Stat. § 115B.03, subd. 1(a)(3) (1992) (owner of facility at time of release of pollutants is responsible for release); *id.* subd. 3(a) (owner of facility responsible for release if owner knowingly permitted others to dispose of waste at the facility). This statute did not exist at the time the dump site was operated.

Unfortunately, the continued use of the term "accident" in the definition of "occurrence" caused division and confusion in the courts. *Id.* at 1248–50. Some courts construed the presence of the word "accident" as an exclusion of foreseeable losses, without distinguishing between "foreseeable" and "expected." Others focused on the "expected" language in the definition of "occurrence," requiring a "high degree of foreseeability" to bar coverage. *Id.* at 1248–49.

In 1970, the standard CGL policy was amended a third time. That year, the qualified pollution exclusion clause was added to the standard policy. Its goal was to limit coverage to those pollution-related losses that arose from "occurrences" that were both "sudden and accidental." Given the difficulties the insurance industry had had with the term "accident," its continued use in the qualified pollution exclusion clause is puzzling. As one commentator noted,

[o]ddly, the insurers still had not learned their lesson. The insurers clung steadfastly to the "accident" language that had haunted both the accident- and occurrence-based policies. That unfortunate language, along with the incorrigible judicial will to compensate blameless victims, plunged the pollution exclusion further into ambiguity and uncertainty than either of its predecessors, accident- or occurrence-based coverage, had been.

*Through the Looking Glass,* 74 Geo.L.J. at 1253 (footnotes omitted).

### *Morton International*

Appellants' equitable estoppel argument is based on the New Jersey Supreme Court's decision in *Morton Int'l v. General Accident Ins. Co.,* 134 N.J. 1, 629 A.2d 831 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994). In *Morton,* the New Jersey Supreme Court held that insurers were estopped to rely on the plain language of the qualified pollution exclusion because the insurers had represented to state regulators that the pollution exclusion merely clarified coverage when, in fact, "the clause virtually eliminated pollution-caused property damage coverage." *Morton,* 629 A.2d at 848. The *Morton* court allowed insureds to assert an estoppel claim based on statements to state regulators because

[t]he industry's presentation and characterization of the standard pollution exclusion clause to state regulators constituted virtually the only opportunity for arms-length bargaining by interests adverse to the industry, insureds having virtually no choice at all but to purchase the industry-wide standard CGL policy.

*Id.*

The court in *Morton* began by addressing whether "sudden" meant temporally abrupt or unexpected. The New Jersey Appellate

Division had held, in an earlier opinion, that "sudden" meant unexpected. *Broadwell Realty Servs. Inc. v. Fidelity & Casualty. Co. of New York,* 218 N.J.Super. 516, 528 A.2d 76, 83 (App.Div.1987). The court in *Morton* overruled *Broadwell,* holding that "sudden" meant temporally abrupt. *Id.* at 847. After an exhaustive survey of case law on the question, the court concluded "that an interpretation of 'sudden' that does not acknowledge its temporal quality is unfaithful to its core meaning." *Morton,* 629 A.2d at 871.

Despite this holding, the *Morton* court refused to enforce the pollution exclusion clause as written. The court explained:

> We are fully satisfied that if given literal effect, the standard clause's widespread inclusion in CGL policies would limit coverage for pollution damage to so great an extent that the industry's representation of the standard clause's effect, in its presentation to New Jersey and other state insurance regulatory agencies, would have been grossly misleading.

*Id.* at 847.

In seeking state regulatory approval for the qualified pollution exclusion, the insurance industry purported to explain the purpose behind the new provision. The IRB explanatory memorandum stated in part:

> Coverage for pollution or contamination is not provided in most cases under present policies because the damages can be said to be expected or intended and thus are excluded by the definition of occurrence. The above exclusion clarifies this situation so as to avoid any question of intent. Coverage is continued for pollution or contamination caused injuries when the pollution or contamination results from an accident except that no coverage will be provided under certain operations for injuries arising out of discharge or escape of oil into any body of water.

With respect to this explanation, the *Morton* court stated:

> The first sentence is simply untrue. As discussed, * * * the 1966 version of the CGL policy covered property damage from gradual pollution and imposed no restriction on the "suddenness" of the pollutant discharge.

*Morton,* 629 A.2d at 852.

The court in *Morton* described the second sentence of the IRB explanation ("the above exclusion clarifies this situation so as to avoid any question of intent") as "even more misleading than the first." *Morton,* 629 A.2d at 852. In the *Morton* court's opinion,

> [u]ndeniably, the pollution-exclusion clause does "avoid any question of intent" because the clause excludes *all* coverage for unintentional pollution damage except for that caused by sudden and accidental discharges. But to characterize so monumental a reduction in coverage as one that "clarifies this situation" simply is indefensible.

*Id.* at 852–53 (emphasis in original).

The final sentence of the IRB explanation stated, "Coverage is continued for pollution or contamination caused injuries when the pollution or contamination results from an accident." The *Morton* court also considered this sentence to be misleading:

> In asserting that coverage for pollution-caused injuries is "continued," the statement does not alert regulators to the critical change effected by the clause: Under the occurrence-based policy, coverage was afforded if the *property damage* was accidental; under the pollution-exclusion clause, even if the property damage is accidental, no coverage is afforded unless the *discharge of pollutants* is both sudden and accidental. The memorandum utterly obscures that distinction, and the conclusion is virtually inescapable that the memorandum's lack of clarity was deliberate.

*Morton,* 629 A.2d at 853 (emphasis in original).

In *Morton,* the insurers had argued that if the court intended to consider the regulatory history of the pollution exclusion clause, the case should be remanded for an evidentiary hearing. The *Morton* court rejected this argument, stating:

> We are persuaded that a remand would be redundant, and that this record together with the reported cases that address the regulatory history and the abundant independent commentary on the subject af-

fords an accurate and comprehensive basis for our determination.

*Id.* at 848.

■ The insurers argue that the *Morton* court misinterpreted the history of the pollution exclusion clause by relying on commentaries written by attorneys who represent insureds in coverage disputes. Instead, respondents argue, this court should rely on the "true" history of the pollution exclusion clause as presented in commentaries written by attorneys who represent insurers in coverage disputes. We do not decide the merits of the declaratory judgment action in this appeal; we decide only whether appellants should be allowed to amend their complaint.

The *Morton* court's denial of an evidentiary hearing on the equitable estoppel claim has been criticized by some commentators. *See, e.g.,* Edward Zampino, et al., *Morton International: The Fiction of Regulatory Estoppel,* 24 Seton Hall L.Rev. 847, 871–73 (1993) (denial of evidentiary hearing a violation of insurers' due process rights). In this case, appellants seek only the evidentiary hearing that was denied to the insurers in *Morton.*

It is worth noting that respondent Hartford notified[3] its departmental and regional managers of the proposed pollution exclusion, telling them:

> While coverage for pollution or contamination damage intentionally caused or which could be said to have been expected by an insured has never been afforded by our liability policies, the need to clarify intent has become necessary. * * * *[T]his endorsement deletes coverage for damages arising from the gradual pollution or contamination of air, land or water when accidentally caused.*
>
> These broad exclusions are being effected without any change in rates as it is believed that the *existing rates do not contemplate the magnitude of contamina-*

*tion and pollution hazard that is present today.*

(Emphasis added.)

In an interoffice memorandum, Hartford stated:

> The one significant effect of the exclusion is the *deletion of coverage for injury or damage arising from* the *gradual pollution* or contamination of air, land or water when accidentally caused.

(Emphasis added.) A deletion of coverage is hardly a clarification of intent. Hartford's own interpretation of the pollution exclusion supports the viability of the claim for relief sought to be included by appellants' motion to amend.

### Motions to Strike

Respondents also offer the affidavit of Thomas O'Malley, former chief assistant rates analyst in the insurance division of the Minnesota Department of Commerce. O'Malley's affidavit was included in the appendix to the Zampino article, 24 Seton Hall L.Rev. at 902–03. Appellants move to strike the O'Malley affidavit, arguing it is not part of the record on appeal. In the alternative, appellants move to supplement the record to include an affidavit rebutting the O'Malley affidavit.

■ Generally, law review articles are not considered to be outside the record on appeal because they are legal resources, not factual assertions. *Sylvester Bros.,* 480 N.W.2d at 376–77. The O'Malley affidavit, however, purports to be evidence and is being used as evidence in this appeal. The article in which the O'Malley affidavit appears was written by counsel for one of the parties in *Morton.*[4] The article was written while a motion for rehearing was pending. The O'Malley affidavit was not intended merely to support the theory of the article, but to support the petition for rehearing. Respondents are attempting to convert the O'Malley affidavit from the mere factual assertion that it is into a legal resource by including it in a law review article. Ordinari-

---

**3.** Hartford has moved to strike the notification from appellants' appendix, contending it was not before the district court. As explained infra, Hartford's motion to strike is denied.

**4.** The author, Edward Zampino, also appears here as counsel for amicus Aetna Casualty and Surety Co.

ly, appellants' motion to supplement the record would be denied. Under the circumstances of this case, however, we have considered the affidavit submitted by appellants to rebut the O'Malley affidavit and find that it supports appellants' theory. Of course, it will be up to a factfinder to determine what the regulators were or were not led to believe.

Respondent Hartford moves to strike the documents in appellants' appendix that contain Hartford's description of the pollution exclusion, asserting these documents were not before the district court. There was, however, an order from the district court compelling Hartford to produce the documents. Hartford did not comply until after the district court had denied appellants' motion to amend. To grant Hartford's motion to strike would reward them for failing timely to obey a court order. Hartford's motion is denied.

The argument that insurers misrepresented the effect of the pollution exclusion has been made in numerous appellate courts, often in connection with the argument that "sudden" means "unexpected." *See ACL Technologies v. Northbrook Property & Casualty Ins. Co.*, 17 Cal.App.4th 1773, 22 Cal. Rptr.2d 206, 217 (1993) *pet. for rev. denied* (Cal. Nov. 17, 1993); *Farm Bureau Mut. Ins. Co. v. Laudick*, 18 Kan.App.2d 782, 859 P.2d 410, 414 (1993) *pet. for rev. denied* (Kan. Nov. 9, 1993); *Lumbermens Mut. Casualty Co. v. Belleville Indus.*, 407 Mass. 675, 555 N.E.2d 568, 573 (1990) *cert. denied*, — U.S. —, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992). Where the argument has been accepted on appeal, it has been done without the benefit of evidentiary hearings. *See Morton*, 629 A.2d at 848; *Joy Tech. v. Liberty Mut. Ins. Co.*, 187 W.Va. 742, 421 S.E.2d 493, 499 (1992); *Just v. Land Reclamation, Ltd.*, 155 Wis.2d 737, 456 N.W.2d 570, 575 (1990). Allowing appellants to amend their complaint will allow the introduction of evidence to decide as contested issues whether the insurers misrepresented the exclusion's effect and whether insurance regulators were misled.

■ The same documents that the *Morton* court found to be deceptive were used to obtain regulatory approval of the pollution exclusion clause in Minnesota. In addition, in describing the pollution exclusion clause to its regional and departmental advisers and in an interoffice memorandum, Hartford stated that the clause deleted coverage for gradual pollution. The appellants in this case are seeking coverage for gradual pollution resulting from the activities of third parties on appellants' property. If the insurers obtained approval of the pollution exclusion by representing that coverage would continue for "passive" polluters who are held liable for gradual pollution, such as appellants claim to be, the insurers may be held to that representation.

We believe Hartford's description of the pollution exclusion, the analysis of the *Morton* court and the pleadings in this case constitute a showing sufficient to require that appellants be allowed to amend their complaint. Evidence is proffered of misrepresentation and deceit in the regulatory approval process; justice requires that a party which may have engaged in such conduct not be allowed to benefit. Minn.R.Civ.P. 15.01.

We emphasize that, at this point, the question is *not* whether misrepresentations were made; the question is whether appellants should have an opportunity to prove their claim that misrepresentations were made. Because appellants have made an adequate showing to have defeated a rule 12 motion, they should have an opportunity to prove their contention.

### DECISION

The district court erred by holding *Sylvester Bros.* to be a bar to appellants' proposed amendment. Appellants' motion to amend must be granted.

**Reversed and remanded.**

HARVEY A. HOLTAN, Judge, dissenting.

HARVEY A. HOLTAN, Judge (dissenting).

I respectfully dissent because count V of the proposed amended complaint fails to state a claim for equitable estoppel. There is no allegation that any policyholder or the

Commissioner reasonably relied on any representation made to the Commissioner by any of the respondents. *See Transamerica Ins. Group v. Paul,* 267 N.W.2d 180, 183 (Minn.1978) (reliance a necessary element of equitable estoppel).

The majority relies on *Sawyer v. Midland Ins. Co.,* 383 N.W.2d 691 (Minn.App.1986), *pet. for rev. granted* (Minn. May 16, 1986), *rev. vacated,* 397 N.W.2d 893 (Minn.1986), to find equitable estoppel. This reliance is misplaced because *Sawyer* is not an equitable estoppel case. It is a case of statutory construction and application. As a matter of law, the only policy the *Sawyer* insurer could issue was a policy which conformed to the policy filed with and accepted by the Commissioner. Any policy not filed with and accepted by the Commissioner is void and unenforceable under Minn.Stat. § 70A.06 (1984). *See Miller v. National Farmers Union Property & Casualty Co.,* 470 F.2d 700, 704 (8th Cir.1972). The insurer is obligated to provide coverage according to the terms of the policy filed and accepted by the Commissioner pursuant to section 70A.06, subdivision 2; such obligation arises not from its private contract with the insured but from its agreement with the state. *Sawyer,* 383 N.W.2d at 694 (citing *Petty v. Allstate Ins. Co.,* 290 N.W.2d 763 (Minn.1980)).

The application of the filed policy terms was a straight application of the law. Misrepresentation and reliance were not involved. The insurer in *Sawyer* was "estopped" to assert the terms of the policy it issued because of the application of the statute, and not because of equity concerns.

In the instant case, however, the terms of the policy issued conform to the terms of the policy filed and approved. *Sawyer* is not applicable here.

Misrepresentation and reasonable reliance are required to prevent a party from asserting rights he would otherwise have. *In re Estate of Peterson,* 203 Minn. 337, 342–43, 281 N.W. 275, 278 (1938). In *Sawyer,* the insurer had no rights under its void and unenforceable policy. In the instant case,

the insurer has a right to enforce the terms of its duly filed and approved policy.

There is a real question as to whether any part of the IRB explanation is a misrepresentation. Even if there were misrepresentations, if the application of the pollution exclusion clause is clear, as *Morton* and *Sylvester Bros.* find, how can it be said that the Commissioner reasonably relied on the IRB explanation? There can be no reasonable reliance when the language of the insurance policy is clear on its face. Notwithstanding these findings, *Morton* applied equitable estoppel on the ground that the insureds have virtually no choice but to accept the policy approved by the state because the insurers are not involved in arms-length bargaining over policy terms.

The Minnesota statutory scheme was devised to protect the public through a commissioner who has a technical staff and is granted statutory power to obtain all the information from insurers which may be needed to assess the insurers' representations, the risks being covered, policy provisions and rates. The scheme also provides the Commissioner with ample power to correct errors and to sanction insurers. The statutes do not contemplate a forum in which insureds may bargain with insurers at arms-length.

The classic elements of equitable estoppel are difficult to apply in these situations. A statutory remedy is preferable to a contrived equitable estoppel remedy as the *Morton* court and the majority seek today.

Although the trial court misapplied *Sylvester Bros.,* I would affirm.