Kenneth M. ANDERSON, as Personal
Representative of the Estate of Fred
W. Hedberg, et al., Respondents,

v.

MINNESOTA INSURANCE GUARANTY
ASSOCIATION, Respondent,

Employers Insurance of Wausau,
a Mutual Company, et al.,
Defendants,

The Hartford Insurance Company, St.
Paul Fire & Marine Insurance Company, Petitioners, Appellants,

National Indemnity Co., Respondent.

No. C7–93–2490.

Supreme Court of Minnesota.

July 28, 1995.

Rehearing Denied Sept. 20, 1995.

Richard J. Chadwick, Chadwick & Assoc., Chanhassen, and William J. Bowman, David G. Leitch, Kevin P. Gallagher, Hogan & Hartson, L.L.P., Washington, DC, for Hartford Ins. Co.

Charles E. Spevacek, William M. Hart, Stacy A. Broman, Joseph W.E. Schmitt, Meagher & Geer, P.L.L.P., Minneapolis, for St. Paul Fire & Marine Ins. Co.

Maclay R. Hyde, Nicholas N. Nierengarten, Rick E. Kubler, Jonathan M. Redgrave, Gray, Plant, Mooty, Mooty & Bennett, Pa., Minneapolis, MN, for Kenneth M. Anderson, et al.

Robert C. Sipkins, Cousineau, McGuire & Anderson, Chtd., Minneapolis, for MN Ins. Guar. Assoc.

Richard B. Allyn, Robins, Kaplan, Miller & Ciresi, Minneapolis, for Nat. Indem. Co.

Daniel S. Weiss, Minneapolis, for defendant employers Ins. of Wausau, et al.

Gina G. Washburn, William J. Jeronimus, Karen A. Schaffer, St. Paul, for MN County Attys. Ass'n.

Hubert H. Humphrey, III, Atty. Gen., John Garry, St. Paul, for Com'r of Commerce.

Hubert H. Humphrey, III, Atty. Gen., Alan C. Williams, St. Paul, for MN Pollution Control Agency.

Charles E. Lundberg, Minneapolis, and Daniel E. Troy, Wiley, Rein & Fielding, Washington, DC, for Ins. Environmental Litigation Ass'n.

## OPINION

TOMLJANOVICH, Justice.

On January 30, 1992, the Estate of Fred Hedberg (the "Estate") brought a declaratory action in Hennepin County District Court against the Minnesota Insurance Guaranty Association (MIGA) seeking a determination that policies issued by the American Mutual Liability Insurance Company provided coverage for costs incurred in remediating pollution that was released gradually over time. In its answer, MIGA asserted, *inter alia,* that coverage was not available under the policies. On August 24, 1993, the Estate brought a motion to amend its complaint to add (1) John Hedberg and Hedberg Partners 87 as plaintiffs, (2) additional insurance companies as defendants, and (3) a claim of equitable estoppel alleging that all of the insurers should be estopped from enforcing the pollution exclusion clause in the policies because the insurers misrepresented the nature of this clause to the Minnesota Commissioner of Insurance (Commissioner) at the time it was approved. On November 8, 1993, the district court denied the Estate's motion to amend, finding that the proposed equitable estoppel claim lacked legal merit.

The court of appeals granted discretionary review of the district court's denial of the Estate's motion to amend and, in a split decision, reversed the district court's judgment, finding that the proposed equitable

estoppel claim was viable. *Anderson v. Minnesota Ins. Guar. Ass'n,* 520 N.W.2d 155, 165 (Minn.App.1994) (Holtan, J. dissenting). Two of the four insurers now appeal the court of appeals' judgment. These insurers contend that the Hedbergs'[1] proposed claim of equitable estoppel lacks legal merit. We agree and therefore reverse.

The Hedbergs presently own an approximately 92–acre parcel of land in Minnetonka, Minnesota. Two of those acres were used as the Minnetonka Township dump from the late 1930s until 1954. In 1987, prior to development of the parcel, an environmental assessment disclosed the existence of the former dump site. The Minnesota Pollution Control Agency (MPCA) was notified, and required the Estate to pay for a remedial investigation regarding the nature and scope of contamination on the site. The Hedbergs tendered a claim for defense and indemnification costs to the insurers; each denied coverage. The Hedbergs then brought the declaratory judgment action that gave rise to this appeal.

The comprehensive general liability (CGL) policies in question were in effect between 1963 and 1984. In 1970, the Insurance Rating Board (IRB) and the Mutual Insurance Rating Board (MIRB) introduced standardized policy language for what is now commonly called the pollution exclusion clause.[2] The proposed exclusion read:

> This insurance does not apply to * * * property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Before insurers could include the pollution exclusion clause in policies issued to Minnesota insureds, the provision had to be approved by the Commissioner. Minn.Stat. § 70A.06, subd. 2 (1969). When the pollution exclusion clause was introduced, the IRB and the MIRB submitted regulatory filings on behalf of their members. With the regulatory filings, the IRB submitted an explanation of the pollution exclusion clause that read:

> Coverage for pollution or contamination is not provided in most cases under present policies because the damages can be said to be expected or intended and thus are excluded by the definition of occurrence. *The above exclusion clarifies this situation so as to avoid any question of intent.* Coverage is continued for pollution or contamination caused injuries when the pollution or contamination results from an accident except that no coverage will be provided under certain operations for injuries arising out of discharge or escape of oil into any body of water.

(emphasis added).[3] In June 1970 the Commissioner approved the standardized pollution exclusion language and, with minor variations, insurance companies adopted the standardized language.

Because they believed that the insurers planned to use the pollution exclusion clause as a defense, the Hedbergs moved to amend their complaint to add a claim of equitable estoppel. This claim was based primarily on the explanation that accompanied the regulatory filing of the pollution exclusion. The Hedbergs claimed the explanation misled insurance regulators across the country, and specifically in Minnesota, into believing that

---

**1.** We refer to the Estate, John Hedberg, and Hedberg Partners 87, collectively, as "the Hedbergs."

**2.** The IRB was an insurance rating bureau for stock companies and the MIRB was an insurance rating bureau for mutual companies. The IRB and the MIRB maintained a joint committee which was involved in drafting the pollution exclusion clause. *See* Ronald R. Robinson, *The Best of Intentions: Drafting the 1966 Occurrence, and the 1973 Pollution Exclusion Policy Lan-* *guage,* 565, 575 (PLI Commercial Law & Practice Course Handbook Series No. 690, Environmental Insurance Coverage Claims & Litig., 1994).

**3.** In policies issued prior to 1973, "occurrence" was defined to mean:

> An accident, including injurious exposure to conditions, which results, during the policy period, in * * * property damage neither expected nor intended from the standpoint of the insured.

the pollution exclusion clause was merely a clarification of existing coverage when in fact, it was a significant reduction in coverage.

■ The only issue on appeal is whether the Hedbergs can state a viable claim for equitable estoppel sufficient to allow amendment of the complaint. A claim is not viable if it fails as a matter of law. *See Eisert v. Greenberg Roofing & Sheet Metal Co.,* 314 N.W.2d 226, 228 (Minn.1982). Thus, the determination of a claim's viability presents a question of law, which we reviewed de novo. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

■ An essential element of equitable estoppel is reasonable reliance. *Northern Petrochem. Co. v. United States Fire Ins. Co.,* 277 N.W.2d 408, 410 (Minn.1979); *United States v. Aetna Casualty & Sur. Co.,* 480 F.2d 1095, 1099 (8th Cir.1973). Whether reasonable reliance exists involves two inquiries: (1) whether reliance occurred, and (2) whether that reliance was reasonable. Without determining whether reliance occurred, we focus entirely on the second inquiry, whether it was reasonable for the Hedbergs or the Commissioner to rely on any information that indicated the pollution exclusion clause did not exclude from coverage pollution that was released gradually over time.

■ In *Board of Regents v. Royal Ins. Co. of America,* this court interpreted the word "sudden" within the pollution exclusion clause. 517 N.W.2d 888, 892 (Minn.1994). We concluded:

> The word "sudden" is used in tandem with the word "accidental," and "accidental" in liability insurance parlance means unexpected or unintended; thus to construe "sudden" to mean "unexpected" is to create a redundancy. * * *
>
> We have no difficulty concluding, in the context here used, that the term "sudden" is used to indicate the opposite of gradual. Consequently, we hold that the "sudden and accidental" exception to the pollution exclusion does not apply to asbestos fibers

released gradually over time from the insured's product.

*Id.* (citations omitted). In determining the appropriate meaning for the word "sudden," we implicitly concluded that the policy language in the pollution exclusion clause was not ambiguous. *See id.* (stating "[b]ecause a word has more than one meaning does not mean it is ambiguous"). Thus, in *Board of Regents* we concluded that the pollution exclusion clause was unambiguous and barred coverage for any discharge that was not both sudden, meaning abrupt,[4] and accidental, meaning unexpected or unintended. 517 N.W.2d at 892. Therefore, a CGL policy with a pollution exclusion clause affords no coverage for a waste disposal site which gradually over time pollutes an area. On the other hand, if an explosion sends chemical fumes over a residential area, or an oil truck overturns and spills oil into a marsh, these would be sudden and accidental happenings, so that the exclusion would not apply and there would be insurance coverage.

Having previously concluded that the pollution exclusion clause is clear and unambiguous, we now conclude that reliance on any explanations contrary to the unambiguous meaning of the policy language is, as a matter of law, unreasonable. Further, we find persuasive appellant Hartford Insurance Company's contention that policy exclusions do affect coverage. A regulator or insured who reads only the endorsement heading CONTAMINATION OR POLLUTION EXCLUSION ENDORSEMENT and later claims to have been induced to conclude that the endorsement would not actually exclude coverage has, as a matter of law, acted unreasonably. *See Anderson,* 520 N.W.2d at 166 (Holtan, J., dissenting) (stating "[e]ven if there were misrepresentations, if the application of the pollution exclusion clause is clear * * * how can it be said that the Commissioner reasonably relied on the IRB explanation? There can be no reasonable reliance * * *.").

We conclude that the Hedbergs cannot state a viable claim for equitable estoppel sufficient to allow amendment of the com-

---

4. Cf. *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.,* 480 N.W.2d 368, 375 (Minn.App.) (construing "sudden" to mean "abrupt"), *pet. for rev. denied* (Minn., Mar. 26, 1992).

plaint because, as a matter of law, the pollution exclusion clause unambiguously exempts from coverage expected pollution released gradually over time, and therefore reliance on any contrary representations was unreasonable.

Reversed.

COYNE and STRINGER, JJ., took no part in the consideration or decision of this case.